KAFKER, J.
**711 *674 Following a jury-waived trial, the defendant was convicted of two counts of breaking and entering in the daytime, G. L. c. 266, § 18 ; one count of breaking and entering in the nighttime, G. L. c. 266, § 16 ; two counts of larceny over $ 250, G. L. c. 266, § 30 ; and one count of larceny of $ 250 or less, G. L. c. 266, § 30. At trial, the Commonwealth produced evidence matching the time and location of these crimes to historical global positioning system (GPS) location data recorded from the GPS monitoring device (GPS device) that was attached to the defendant as a condition of his probation. Before trial, the defendant had moved to suppress this evidence, arguing that the Commonwealth's act of accessing and reviewing this GPS location data was an unreasonable search under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. The motion was denied.
On appeal, the defendant claims that (i) the motion judge erred in denying his motion to suppress after concluding that the Commonwealth did not commit a search in the constitutional sense when it accessed the historical GPS location data recorded from the defendant's GPS device without a warrant, and (ii) the evidence at trial was not sufficient to support the defendant's convictions on the charge of breaking and entering in the nighttime and one of the charges of larceny over $ 250.
For the reasons stated below, we conclude that although the original imposition of GPS monitoring as a condition of the defendant's probation was a search, it was reasonable in light of the defendant's extensive criminal history and willingness to recidivate while on probation. We also conclude that once the GPS device was attached to the defendant, he did not possess a reasonable expectation of privacy in data targeted by police to determine his whereabouts at the times and locations of suspected criminal activity that occurred during the probationary period. Accordingly, no subsequent search in the constitutional sense under either art. 14 or the Fourth Amendment occurred. Finally, we conclude that the evidence introduced at trial was sufficient to support the trial judge's finding, beyond a reasonable doubt, that **712 the defendant committed the crimes of breaking and entering in the nighttime and both charges of larceny over $ 250. We therefore affirm the motion judge's denial of the motion to suppress and the defendant's convictions.[1]
Background. 1. Motion to suppress. We summarize the facts as found by the judge who decided the motion to suppress, supplementing those findings with undisputed facts from the documentary evidence that was before the motion judge. See Commonwealth v. Monroe, 472 Mass. 461, 464, 35 N.E.3d 677 (2015).
In April 2012, the defendant appeared in the District Court for a probation violation hearing on four criminal dockets stemming from his prior convictions of receipt of stolen property and restraining *675 order violations. The probation surrender was based on new charges that included breaking and entering and larceny from a building. After stipulating to the probation violation, the defendant asked for an extension of his probation subject to the added condition that he wear a GPS device on his ankle. The hearing judge accepted the request and ordered an extension of the defendant's probation for an additional six months with the added condition of GPS monitoring.
Between May and September 2012, while the defendant was on probation and subject to GPS monitoring, several break-ins occurred at homes in Hanson, Marshfield, and Pembroke. Approximately one year after these break-ins, in September 2013, the defendant was arrested near the scene of a separate break-in in Randolph. Randolph police became aware that the defendant had at one time been outfitted with a GPS device. Randolph police then contacted a Marshfield police detective and suggested that she contact the probation department to review the defendant's historical GPS location data records during the approximate times of the unsolved break-ins. Marshfield police and probation officers thereafter accessed the defendant's historical GPS location data records and cross-referenced his location with the times and locations of the break-ins. They discovered that the defendant was at or near the scene of each break-in at approximately the same time that each home was broken into. The defendant was then indicted and charged with multiple counts of breaking and entering and larceny.
Before trial, the defendant moved to suppress the historical **713 GPS location data, arguing that the Commonwealth's act of accessing and reviewing this data without a warrant was an unreasonable search in violation of the Fourth Amendment and art. 14. The motion judge concluded that the Commonwealth's conduct did not amount to a search in the constitutional sense under either the Fourth Amendment or art. 14 and denied the defendant's motion. The case then moved to trial.
2. The defendant's trial. One of the break-ins for which the defendant was charged and convicted occurred at a home in Marshfield on or about September 1, 2012. The defendant was convicted of breaking and entering the home in the nighttime and of larceny over $ 250. The defendant now appeals, arguing that there was not sufficient evidence to support the two convictions related to this break-in. We recite the facts the trial judge could have found with respect to these charges in the light most favorable to the Commonwealth, reserving other details for discussion when relevant to the issues raised. Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979).
From August 31, 2012, to September 3, 2012, the homeowners left their home to visit friends in New Hampshire. On September 3, 2012, the homeowners returned home; discovering broken glass spread over the floor of their garage, they called local police. They soon discovered that several pieces of jewelry, approximately $ 400 in cash, and other sentimental items were missing from their home.
During the August 31 to September 3 time frame, the defendant's ankle was affixed with a GPS device as a condition of probation.[2] Evidence elicited at trial *676 showed that while wearing a GPS device, a probationer's location is recorded and stored by the device once every minute. This recorded location data is then transmitted to the probation service's electronic monitoring program (ELMO) system once every hour. Once the location data is uploaded to the ELMO system, it can be accessed by probation officers and displayed on electronically generated maps to pinpoint the probationer's **714 location on a minute-by-minute basis. If the probationer is stationary or moving slowly when his or her location is recorded by the GPS device, a green dot will appear on the map. Because the probationer's location is recorded every minute, if a probationer remains stationary for more than a few minutes, a cluster of green dots will appear on the map. If the probationer is in motion when his or her location is recorded by the device, however, a green arrow will appear on the map to indicate the speed and direction of the probationer's movement.
The defendant's GPS device transmitted location data to the ELMO system, establishing that he was in the vicinity of the home in question on the night of September 1, 2012, and early morning of September 2, 2012. Specifically, a map generated by the ELMO system showed several green arrows on the street in front of the home, confirming that the defendant was traveling on that street at approximately 9:23 and 9:51 P.M. on September 1. The map also placed the defendant, represented by a single green dot, directly in front of, if not on, the property on September 1. An additional map generated by the ELMO system revealed that the defendant was near the home just after midnight on September 2, 2012, and showed a cluster of green dots directly on and around the home that same day.
At the close of trial, the judge found the defendant guilty of the charges of breaking and entering that home in the nighttime and of larceny over $ 250. The defendant moved for required findings of not guilty on these charges, but was denied. The defendant appealed from this denial, and we granted his application for direct appellate review.
Discussion. 1. Motion to suppress. On appeal, the defendant challenges the Commonwealth's act of accessing the historical GPS location data recorded from his GPS device, arguing that the retrieval and review of this data without a warrant was an unreasonable search under the Fourth Amendment and art. 14. Ordinarily, in reviewing a ruling on a motion to suppress, we accept the motion judge's "subsidiary findings of fact absent clear error," but we "review independently the application of constitutional principles to the facts found" (citation omitted). Commonwealth v. Mauricio, 477 Mass. 588, 591, 80 N.E.3d 318 (2017). However, we review any factual "findings of the motion judge that were based entirely on the documentary evidence" de novo. Monroe, 472 Mass. at 464, 35 N.E.3d 677, quoting Commonwealth v. Thomas, 469 Mass. 531, 539, 21 N.E.3d 901 (2014). Because the motion judge here conducted a nonevidentiary hearing **715 at which the evidence was stipulated, "we are in the same position as the motion judge" to assess the documentary evidence put forward by the parties.[3] *677 Monroe, supra, quoting Thomas, supra at 535 n.4, 21 N.E.3d 901. See Commonwealth v. Tremblay, 480 Mass. 645, 654-655, 107 N.E.3d 1121 (2018) ("We now affirm the principle that an appellate court may independently review documentary evidence, and that lower court findings drawn from such evidence are not entitled to deference").
The Fourth Amendment and art. 14 protect individuals from "unreasonable searches" and "seizures." For the protections of either the Fourth Amendment or art. 14 to apply, however, the Commonwealth's conduct must constitute a search in the constitutional sense. Commonwealth v. Magri, 462 Mass. 360, 366, 968 N.E.2d 876 (2012). In its most traditional form, a search occurs when "the Government obtains information by physically intruding on a constitutionally protected area" (citation omitted). Grady v. North Carolina, --- U.S. ----, 135 S.Ct. 1368, 1370, 191 L.Ed.2d 459 (2015) (per curiam). A search in the constitutional sense may also occur, however, "when the government's conduct intrudes on a person's reasonable expectation of privacy." Commonwealth v. Augustine, 467 Mass. 230, 241, 4 N.E.3d 846 (2014), S.C., 470 Mass. 837, 26 N.E.3d 709 and 472 Mass. 448, 35 N.E.3d 688 (2015). See Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). An individual has a reasonable expectation of privacy (i) if the individual has "manifested a subjective expectation of privacy in the object of the search," and (ii) if "society is willing to recognize that expectation as reasonable" (citation omitted). Augustine, supra at 242, 4 N.E.3d 846. The defendant bears the burden of establishing that the governmental conduct violated his or her reasonable expectations of privacy. Commonwealth v. Miller, 475 Mass. 212, 219, 56 N.E.3d 168 (2016).
In the instant case, we must analyze the constitutionality of both the initial imposition of GPS monitoring for the purposes of probation and the police's subsequent review of the historical GPS location data for investigatory purposes after the defendant's probationary period had expired. For the reasons set forth infra, we conclude that although the initial imposition of the GPS monitoring for probationary purposes was a search in the constitutional sense under the Fourth Amendment and art. 14, it was a **716 reasonable one. We also conclude that the police's subsequent act of accessing and reviewing the historical GPS location data after the defendant's probationary period had expired to determine whether he was present at the general time and place of particularly identified crimes did not constitute a search under either the Fourth Amendment or art. 14, because the defendant had no reasonable expectation of privacy in this data.
a. The power and potential of GPS technology. As explained supra, a search in the constitutional sense may occur "when the government's conduct intrudes on a person's reasonable expectation of privacy." Augustine, 467 Mass. at 241, 4 N.E.3d 846. This court and the United States Supreme Court have recognized the difficulty of defining expectations of privacy that are implicated by novel applications of new technologies. Both courts have emphasized, however, that privacy rights cannot be left at the "mercy of advancing technology" but rather must be preserved and protected as new technologies are adopted and applied by law enforcement. See, e.g., Kyllo v. United States, 533 U.S. 27, 35, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (prohibiting law enforcement's warrantless use of thermal imaging device to look into home so as not to leave privacy rights "at the mercy of advancing technology");
*678 Olmstead v. United States, 277 U.S. 438, 473, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting) (noting that courts must be vigilant to guard against "[s]ubtler and more far-reaching means of invading privacy [that] have become available to the government"); Augustine, supra at 250-251, 4 N.E.3d 846 (restricting law enforcement's use of cell site location information [CSLI] to track individuals due to intrusion of privacy interests). We are now tasked with addressing these concerns in the context of law enforcement's use of a probationer's GPS location data for investigatory purposes.
As this court and the Supreme Court have held in recent years, there is no question that the government's extensive collection and examination of personal location data can intrude on an individual's reasonable expectation of privacy, at least for an individual who is not a probationer. The Supreme Court has emphasized in the Fourth Amendment context that individuals have a reasonable expectation of privacy in a detailed comprehensive documentation of their physical movements over an extended period of time due to the amount of sensitive and private information that can be gleaned from this data. Carpenter v. United States, --- U.S. ----, 138 S.Ct. 2206, 2217, 2218, 201 L.Ed.2d 507 (2018) ("individuals have an expectation of privacy in the whole of their physical movements"). The same is **717 true under art. 14. See Augustine, 467 Mass. at 253, 4 N.E.3d 846 ; Commonwealth v. Rousseau, 465 Mass. 372, 382, 990 N.E.2d 543 (2013). Much less clear, however, is how such decisions apply to probationers who have GPS devices attached to them as a condition of probation.
As is the case when an individual carries a cellular telephone or has a GPS device attached to his or her vehicle, a probationer's precise location is continuously tracked while he or she is wearing a GPS device as a condition of probation. See Augustine, 467 Mass. at 253, 4 N.E.3d 846 ; Rousseau, 465 Mass. at 382, 990 N.E.2d 543. Because law enforcement cannot similarly and continually track a probationer's location and monitor them in real time, or at least do so without extraordinary expense, the historical GPS location data gives probation officers and police "access to a category of information otherwise unknowable." Carpenter, 138 S.Ct. at 2217-2218. See United States v. Jones, 565 U.S. 400, 415-416, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring). See also Carpenter, supra at 2218 ("With just the click of a button, the Government can access ... [a] deep repository of historical location information at practically no expense"). The nature and extent of this GPS location data yields a "treasure trove of very detailed and extensive information about the individual's 'comings and goings' " for law enforcement. Augustine, supra at 251, 4 N.E.3d 846. See Jones, supra at 415, 132 S.Ct. 945 (Sotomayor, J., concurring) ("GPS monitoring generates a precise, comprehensive record of a person's public movements ..."). This is particularly true where the tracking takes place over a long period of time. Augustine, supra at 253, 4 N.E.3d 846 ("when ... tracking takes place over extended periods of time ... the cumulative nature of the information collected implicates a privacy interest on the part of the individual who is the target of the tracking").
In cases of an extended probationary period, the Commonwealth is able to collect and archive an enormous volume of location data.[4] With this location data at its disposal, the Commonwealth could conceivably reconstruct a complete mapping of a probationer's movements throughout the *679 probationary period if it chose to do so. See Carpenter, 138 S.Ct. at 2217. In so doing, the Commonwealth would be able to discover an extensive amount of sensitive and private information about a probationer's life. See ibr.US_Case_Law.Schema.Case_Body:v1">id. ; Augustine, 467 Mass. at 248-249, 4 N.E.3d 846. As the Supreme Court recently explained in Carpenter, supra at 2217, in the context of CSLI, location records "hold for many Americans the **718 privacies of life" and "provide[ ] an intimate window into a person's life, revealing not only his [or her] particular movements, but through them his [or her] familial, political, professional, religious, and sexual associations" (quotations and citations omitted).
With this understanding of the power and the potential of this technology, we turn to the particular legal issues presented by the attachment of a GPS device to a probationer with a lengthy criminal history as a condition of probation, and to the subsequent act of accessing and reviewing this location data by the police after the expiration of his or her probationary period.
b. Imposition of GPS monitoring as a condition of probation. In 2015, in Grady, the United States Supreme Court held that a search under the Fourth Amendment occurs when the government "attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements." Grady, 135 S.Ct. at 1370. There, the Court considered the constitutionality of a North Carolina statute that required recidivist sex offenders to be subjected to GPS monitoring. Id. at 1369. After determining that the GPS monitoring was "plainly designed to obtain information," and did so by "physically intruding on a subject's body," the Court concluded that it was a search under the Fourth Amendment. Id. at 1371. Imposing GPS monitoring as a condition of probation is also a search in the constitutional sense under art. 14. Commonwealth v. Feliz, 481 Mass. 689, 119 N.E.3d 700, 2019 WL 1339199 (2019). Accordingly, the Commonwealth conducted a search of the defendant when the GPS monitoring condition was imposed on the defendant in this case.[5] See Grady, supra at 1371 ; Feliz, supra.
As the Grady Court also explained, such a search is constitutional only if it was reasonable. Grady, 135 S.Ct. at 1371. See Feliz, 481 Mass. at ----, 119 N.E.3d 700 ; Commonwealth v. Entwistle, 463 Mass. 205, 213, 973 N.E.2d 115 (2012), cert. denied, 568 U.S. 1129, 133 S.Ct. 945, 184 L.Ed.2d 736 (2013) ("the ultimate touchstone of ... art. 14 is reasonableness" [quotation and citation omitted] ). Article 14 requires an "individualized determination"
**719 of the reasonableness of subjecting a defendant to GPS monitoring as a condition of probation. Feliz, supra at ----, 119 N.E.3d 700. In making this determination, courts must balance "the Commonwealth's need to impose GPS monitoring against the privacy invasion occasioned by such monitoring." Feliz, supra at ----, 119 N.E.3d 700. See Grady, supra. Courts may consider a "constellation of factors," including, among others, the intrusiveness of the search; the defendant's particular circumstances, such as his or *680 her criminal convictions, past probation violations, or risk of recidivism; and the probationary purposes, if any, for which the monitoring was imposed. Feliz, supra at ----, 119 N.E.3d 700 (analyzing goals of probation and defendant's likelihood to recidivate in balancing test). See Grady, supra (noting that reasonableness depends on "the totality of the circumstances"). No single factor, however, is dispositive in every case. Feliz, supra at ----, 119 N.E.3d 700.
Prior to the imposition of GPS monitoring as a condition of his probation, the defendant in this case was on probation for several convictions, including receiving stolen property and restraining order violations. The defendant thereafter violated his probation when he was charged with breaking and entering in the nighttime and larceny from a building. At the probation violation hearing, the defendant stipulated to the violations and requested that he be subject to GPS monitoring in an effort to avoid incarceration. The judge extended his probation for six months and ordered the GPS monitoring. At the hearing, the judge was clearly concerned about the defendant's likelihood to recidivate in the future. Specifically, the judge ordered the defendant to be held pending the installation of the GPS device to his ankle because the judge was "not comfortable" releasing the defendant to the public until it was determined when he could be "hooked up" with the GPS device and tracked.
In light of the defendant's criminal convictions, and past probation violations, the record makes clear that GPS monitoring was imposed on the defendant for the legitimate probationary purposes that this court and the Supreme Court have previously identified. See United States v. Knights, 534 U.S. 112, 120-121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ; Feliz, 481 Mass. at ----, 119 N.E.3d 700 ; Commonwealth v. Lapointe, 435 Mass. 455, 459, 759 N.E.2d 294 (2001). These include deterring the probationer from engaging in criminal activity and detecting such criminal activity if it occurs. See Knights, supra ; Lapointe, supra ; Commonwealth v. Power, 420 Mass. 410, 415, 650 N.E.2d 87 (1995), cert. denied, 516 U.S. 1042, 116 S.Ct. 697, 133 L.Ed.2d 655 (1996). Although we have recognized that the **720 imposition of GPS monitoring as a condition of probation significantly burdens a probationer's liberty, Feliz, supra at ----, 119 N.E.3d 700, we conclude that the intrusiveness of the GPS monitoring condition imposed on the defendant-probationer's already diminished privacy expectations[6] was outweighed by the governmental interests served by such monitoring, including but not limited to the deterrence and detection of criminal activity during the probationary period. Accordingly, the defendant's particular circumstances rendered the imposition of GPS monitoring as a condition of his probation for six months reasonable under the Fourth Amendment and art. 14. Cf. Belleau v. Wall, 811 F.3d 929, 936-937 (7th Cir. 2016) (mandatory imposition of GPS monitoring for probationer pursuant to statute reasonable where defendant was recidivist sex offender). Contrast Feliz, supra at ----, 119 N.E.3d 700 (GPS monitoring condition unreasonable in defendant's particular circumstances where, among other factors, Commonwealth presented insufficient evidence that defendant posed *681 threat of "reoffending, or otherwise of violating the terms of his probation").
c. Law enforcement's subsequent access to historical GPS location data. Having found the condition of probation subjecting the defendant to GPS monitoring for six months to be a reasonable search, we next address the constitutionality of the Commonwealth's subsequent act of accessing the historical GPS location data recorded from the defendant's GPS device. The Commonwealth's retrieval and review of this historical data requires a separate constitutional inquiry under the Fourth Amendment and art. 14 because it was conducted by the police, not the probation service, for investigatory, rather than probationary, reasons. It was also conducted after the defendant's probationary period had ended.
This type of governmental conduct is distinct from the periodic review of a probationer's GPS location by probation officials. The decision to review the GPS location data was not, for example, the result of the defendant entering an exclusionary zone, which would trigger an alert to a probation official. Nor was this a review of the defendant's location by a probation official to ensure compliance with any of the defendant's other conditions of probation.
**721 Rather, the review here was undertaken on the basis of law enforcement's hunch that the defendant may have been responsible for various unsolved housebreaks that took place in the preceding months. Accordingly, it requires a separate constitutional analysis.
i. Subjective expectation of privacy. To claim a reasonable expectation of privacy, the defendant must first "manifest[ ] a subjective expectation of privacy in the object of the search" (citation omitted). Augustine, 467 Mass. at 242, 4 N.E.3d 846. The defendant here requested and agreed to the GPS monitoring as a condition of his probation. He also averred in his affidavit in support of his motion to suppress that he was told that "the purpose of the GPS bracelet was to ensure that [he] did not enter any exclusionary zones."[7] At minimum, the defendant knew that he was subject to GPS monitoring and that his location could be broadcast to probation officials under certain circumstances.[8]
What the defendant subjectively understood his expectation of privacy to be while wearing the GPS device in this case is not perfectly clear. Whether he could plausibly argue that he did not understand that the purpose of the GPS device was to deter *682 and detect his uninvited presence in other people's homes is not worth belaboring, however, as we conclude that he could have no objectively reasonable expectation of privacy in the historical GPS location data that was accessed and used by the Commonwealth here. **722 ii. Objective expectation of privacy. Even assuming that the defendant had a subjective expectation of privacy, the expectation must be one that society is willing to recognize as reasonable for the protections of the Fourth Amendment and art. 14 to apply. Augustine, 467 Mass. at 242, 4 N.E.3d 846. The defendant's status as a probationer is "salient" to this evaluation. Commonwealth v. Moore, 473 Mass. 481, 485, 43 N.E.3d 294 (2016). See Knights, 534 U.S. at 119, 122 S.Ct. 587. By virtue of being on probation, a probationer is subject to regular government supervision and thus can neither enjoy the same amount of liberty nor reasonably expect the same amount of privacy as an ordinary citizen. See Knights, supra. Accordingly, this court and the Supreme Court have recognized that, although probationers do not give up all expectations of privacy while on probation, their expectations are significantly diminished. See id. ; Moore, supra.
The defendant here was of course not just on probation; he was on probation with the added condition of GPS monitoring because he had stipulated to violating his original sentence of probation after he was charged with breaking and entering and larceny while on probation. The defendant was thus on notice that GPS monitoring was imposed as a result of the defendant's criminal activity while on probation and the judge's concern over the defendant's demonstrated risk of recidivism. Any such defendant-probationer would therefore objectively understand that his or her person and movements were being recorded by the GPS device and monitored by the Commonwealth to ensure compliance with probationary conditions and to deter him or her from committing future crimes while wearing the GPS device. This understanding further diminished any objective expectation of privacy he might have had in his whereabouts, at least during the probationary period. Knights, 534 U.S. at 119-120, 122 S.Ct. 587 (privacy expectations diminished where probationer aware of condition of probation subjecting him to government monitoring). As the dissent appropriately recognizes, the defendant's subsequent decision to break and enter peoples' homes while wearing the GPS device in these circumstances took tremendous "chutzpah." Post at ----, 119 N.E.3d 669.
The Legislature has also provided for police access to probation information in G. L. c. 276, § 90, which states, in pertinent part, that a probation officer's records may "at all times be inspected by police officials of the towns of the commonwealth." G. L. c. 276, § 90. The statute thus provides an express, and **723 apparently unlimited, authorization for law enforcement to review probation records, including the historical GPS location data recorded from a probationer's GPS device. See id. See also G. L. c. 276, § 100. The motion judge principally relied on this statute in reaching his conclusion that the defendant did not have an objectively reasonable expectation of privacy in the GPS location data recorded from the GPS device. The Commonwealth similarly argues that because the Legislature has authorized the police to inspect a probationer's records, the probationer has no objective expectation of privacy in any information contained therein. Although the statute informs our analysis of the objective expectation of privacy probationers may have in the GPS location data recorded from their *683 GPS devices, it does not end our inquiry. We must, as always, provide an independent review of the constitutionality of the governmental conduct that is authorized by statute. Commonwealth v. Blood, 400 Mass. 61, 75, 507 N.E.2d 1029 (1987) ("the historic fact of the Legislature's choice does not relieve us of our constitutional obligation to review the validity of a search ... in light of art. 14").[9]
The defendant contends that the Commonwealth's retrieval and review of the historical GPS location data intruded on his objective expectation of privacy because the Commonwealth accessed a broad and extensive accumulation of location data that spanned a period of several months. Analogizing his circumstances to those present in recent cases involving governmental use of location records outside the probation context, such as CSLI, the defendant argues that in accessing the GPS location data recorded from his GPS device, the Commonwealth was exposed to an enormous amount of sensitive information that could provide an **724 "intimate window" into his life. See Carpenter, 138 S.Ct. at 2217-2218. We recognize and respect the significant privacy concerns raised by the continuous recording, collection, and accumulation of location data described by the defendant. See ibr.US_Case_Law.Schema.Case_Body:v1">id. ; Augustine, 467 Mass. at 251-253, 4" url="https://cite.case.law/citations/?q=4%20N.E.3d%20846">4 N.E.3d 846. That being said, our task is to determine whether an individual's expectation of privacy is one that society is willing to recognize as reasonable. Augustine, supra at 242, 4 N.E.3d 846. There is no question that the reasonableness of any expectations of privacy held by a probationer knowingly subject to GPS monitoring as a condition of probation is far different from the reasonableness of the expectations of privacy held by individuals who are surreptitiously tracked by law enforcement.[10]
As explained supra, the defendant was subjected to GPS monitoring after he stipulated to having been charged with engaging in criminal activity while serving his original probation sentence. Under these circumstances, a probationer subject to GPS monitoring as a condition of probation would certainly objectively understand that his or her location would be recorded and monitored to determine compliance with the conditions of probation, including whether he or she had engaged in additional criminal activity, to deter the commission of such offenses, and that police would have access to this location information for that purpose.[11]
*684 General Laws c. 276, § 90, which serves the legitimate, even compelling, governmental purpose of detecting and determining whether a probationer engaged in criminal activity during the probationary period, confirms that objective understanding by expressly providing for police access to this data. This governmental interest in detecting and determining whether a probationer had engaged in criminal activity during his probationary period does not disappear once the probationary period ends. Indeed, criminal activity that occurred during the probationary period is of particular concern to the Commonwealth, as it reflects the recidivist nature of the probationer. This is true regardless of whether the criminal activity is detected during or after the probationary period. Accordingly, as opposed to nonprobationers who have their GPS, CSLI, or other precise location information recorded and reviewed by law enforcement without their knowledge, **725 the defendant could not reasonably expect that his whereabouts while subject to GPS monitoring, particularly his whereabouts at the time and place of criminal activity, would remain private from government eyes.[12] The defendant therefore could have no reasonable expectation of privacy in the data accessed by the police here to target criminal activity during the probationary period, even where the data was accessed after the probationary period ended.[13]
Moreover, the Commonwealth's conduct did not amount to the same type of conduct we have identified in other contexts as intruding on an individual's reasonable expectation of privacy in his or her whereabouts. See Augustine, 467 Mass. at 253, 4 N.E.3d 846 (CSLI) ; Rousseau, 465 Mass. at 382, 990 N.E.2d 543 (GPS tracking of motor vehicle). The record does not describe law enforcement engaged in an effort to map out and analyze all of the defendant's movements over the six-month probationary period. Nor does the Commonwealth appear to have, as the defendant argues on appeal, "rummaged through five months' worth of ... locational data to find and trace every move [the defendant] made" during his probationary period. Rather, as the defendant recognized in his motion to suppress, *685 the Commonwealth reviewed the defendant's historical GPS location data to determine whether he was present at the general times and locations when various unsolved break-ins may have **726 occurred.[14] This is corroborated by the motion to suppress record, which appears to show that the GPS location data actually accessed and reviewed by the Commonwealth was targeted to the task at hand. The record before the motion judge, and provided to us on appeal, thus describes law enforcement accessing and analyzing the defendant's GPS location data with respect to the general times and locations of suspected criminal activity, particularly unsolved break-ins in Hanson, Marshfield, and Pembroke. Simply comparing subsets of the defendant's GPS location **727 data recorded while he was on probation to the general times and places of suspected criminal activity during the probationary period is not a search in the constitutional sense. At least in other contexts, society has not recognized a probationer's purported expectation of privacy in information that identifies his or her presence at the scene of a crime as a reasonable one. Cf. Commonwealth v. Arzola, 470 Mass. 809, 816, 820, 26 N.E.3d 185 (2015), cert. denied, --- U.S. ----, 136 S.Ct. 792, 193 L.Ed.2d 709 (2016) (deoxyribonucleic acid [DNA] analysis of bloodstain found on defendant's shirt did not amount to search because Commonwealth performed narrow *686 analysis that avoided "reveal[ing] more information than the identity of the source"); Boroian v. Mueller, 616 F.3d 60, 67-68 (1st Cir. 2010) (retention and subsequent use of DNA profiles only to match against other profiles in criminal database after probationary period expired did not "violate an expectation of privacy that society is prepared to recognize as reasonable").
We also understand that even a targeted review of GPS data directed at times and locations of suspected criminal activity during a probationary period will likely expose the police to some other information concerning the defendant's whereabouts during the relevant time periods. Cf. Knights, 534 U.S. at 119-121, 122 S.Ct. 587 (discussing diminished expectations of privacy held by probationers). This is, however, quite different from either mapping out and reviewing all of the defendant's movements while on probation or rummaging through the defendant's historical GPS location data indiscriminately. So long as the review is targeted at identifying the defendant's presence at the time and location of particular criminal activity during the probationary period, it is not a search, as such review is consistent with a probationer's limited expectations of privacy. See id. Police action necessary to deter and detect criminal activity during the probationary period is reasonably expected. See G. L. c. 276, § 90.
In sum, this case is not, as the defendant argues, one in which the police, after his probation had expired, mapped out months of the defendant's historical GPS location data in a coordinated effort to recreate a full mosaic of his personal life, over an extended and unnecessary period of time, that would have revealed, in the words of the United States Supreme Court, "not only his particular movements, but through them his [or her] familial, political, professional, religious, and sexual associations" (quotation and citation omitted). Carpenter, 138 S.Ct. at 2217. Nor it is a case of indiscriminate rummaging through six months of data.
**728 Those circumstances might raise different, more difficult constitutional questions about objective expectations of privacy, even for a probationer subjected to GPS monitoring. We need not, and do not, decide that question today. According to the record before the motion judge, the police here instead targeted their analysis to whether the defendant -- a probationer with significantly diminished expectations of privacy in his whereabouts while on probation -- was present at the general times and locations of crimes committed during his probationary period. Such a review of the probationer's GPS location data, even if it may have revealed the presence of some lawful activities, did not intrude on any privacy expectations that society would be willing to recognize as reasonable. Accordingly, on the record put before the motion judge, the defendant has failed to make a showing that the Commonwealth intruded on any reasonable expectation of privacy he might have had in this data once the GPS was imposed as a condition of probation. The Commonwealth therefore did not commit a search in the constitutional sense under the Fourth Amendment or art. 14 when the police accessed this data after his probationary period expired.
2. Sufficiency of the evidence. The defendant also argues that the trial judge erred in denying his motion for required findings of not guilty on the counts of breaking and entering in the nighttime and larceny over $ 250 that arose from the break-in in Marshfield on or about September 1, 2012. Specifically, the defendant argues that the GPS location data introduced at trial only placed him in the vicinity of, but not inside, the home in question on September 1, 2012. Accordingly, he argues, *687 the evidence put forth at trial was speculative and therefore not sufficient to prove beyond a reasonable doubt that he ever broke into and entered the home. We disagree.
In reviewing the denial of a motion for a required finding of not guilty, we must determine whether the evidence, when "viewed in the light most favorable to the Commonwealth and drawing all inferences in favor of the Commonwealth, would permit a rational [trier of fact] to find each essential element of the crime beyond a reasonable doubt." Commonwealth v. Merry, 453 Mass. 653, 660, 904 N.E.2d 413 (2009), citing Latimore, 378 Mass. at 676-677, 393 N.E.2d 370. "While the inferences drawn must be reasonable, they need not be necessary or inescapable" (quotation and citation omitted). Merry, supra at 661, 904 N.E.2d 413. The evidence would not be sufficient to convict the defendant of a charged crime, however, "if it requires piling **729 inference upon inference, or requires conjecture and speculation" (quotations and citation omitted). Id.
General Laws c. 266, § 16, provides: "Whoever, in the night time, breaks and enters a building ... with intent to commit a felony ... shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one-half years." The element of "break[ing]" is not defined by the statute, but has "long been understood to include all actions violating the common security of a dwelling," including "obvious intrusions into locked areas," "lifting a latch and opening the door," "shoving up a window," and moving "to a material degree something that barred the way" (quotations and citations omitted). Commonwealth v. Burke, 392 Mass. 688, 689-690, 467 N.E.2d 846 (1984). The element of "enter[ing]" is similarly not defined by the statute, but has traditionally been interpreted as constituting "any intrusion into a protected enclosure by any part of a defendant's body." Commonwealth v. Stokes, 440 Mass. 741, 748, 802 N.E.2d 88 (2004), quoting Burke, supra at 690, 467 N.E.2d 846.
Here, the evidence at trial showed that the homeowners were away from their home from August 31 to September 3, 2012. At no time did the homeowners grant the defendant permission to enter their home. When they returned home, they discovered that broken glass was spread on the floor of their garage. They later discovered that cash, jewelry, and sentimental items were missing from their home. The value of the missing items exceeded $ 250.
At the time of the break-in, the defendant had been wearing a GPS device as a condition of probation. The device recorded the defendant's location every minute while he was wearing it and uploaded this data to the ELMO system once every hour. There was no evidence that the defendant's GPS device was inaccurate or had been malfunctioning in any way during his six-month probationary period. The defendant's GPS device transferred location data to the ELMO system that placed the defendant in and around the home on the evening of September 1 and the very early morning of September 2.
At trial, the Commonwealth introduced this evidence through a collection of screenshots of maps that were electronically generated by the ELMO system.[15] In these maps, the defendant's location was *688 represented by either a green dot or a green arrow, **730 depending on the defendant's speed of movement at the time his location was recorded by his GPS device. One of these maps clearly showed that as of approximately 9:23 and 9:51 P.M. on the night of September 1, the defendant was traveling on the street on which the home is located. Another map showed that the defendant was stationary on the street directly in front of, if not on, the property on September 1. A second set of maps subsequently confirmed that the defendant was steps away from the property at 12:03 A.M. on September 2. These maps also showed several green dots located around, and indeed directly on, the home at various times on September 2.
The defendant argues that this evidence was not sufficient under Latimore to convict him of breaking and entering because the GPS location data could not definitively prove that he ever entered the home. Rather, the defendant argues, these maps merely place him "in the general vicinity of [the home], but not on the property itself," and that accordingly, the Commonwealth's evidence only proved that he had the "opportunity to commit the charged crime[s]." The defendant overlooks the evidence of his location on the early morning of September 2 that was properly admitted at trial. This evidence placed the defendant directly on the property for several minutes. With all of this evidence in hand, any rational trier of fact could have reasonably inferred that the defendant broke and entered the home on or about September 1 and committed larceny over $ 250. Accordingly, we conclude that there was sufficient evidence, when "viewed in the light most favorable to the Commonwealth" and taken together with the reasonable inferences drawn therefrom, to support the trial judge's conclusions that the defendant broke and entered the home on or about September 1 with the intent to commit a felony and stole items valued in excess of $ 250. Merry, 453 Mass. at 660, 904 N.E.2d 413. We therefore affirm the defendant's convictions.
Conclusion. For these reasons, we affirm the denial of the defendant's motion to suppress and the defendant's convictions of breaking and entering in the nighttime under G. L. c. 266, § 16, and larceny over $ 250 under G. L. c. 266, § 30.
So ordered.

We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and the American Civil Liberties Union of Massachusetts and by the Massachusetts Probation Service.

The defendant was regularly supervised by his probation officer throughout his probationary period. The probation officer testified that there were no indications that the global positioning system (GPS) monitoring device had been tampered with or was otherwise malfunctioning during the probationary period. He further testified that in his experience, he had never encountered an issue where a probationer's GPS device erroneously recorded his or her location such that the probation service's electronic monitoring program system showed that the probationer was in a location that he or she had not actually been.

The documentary evidence before the motion judge here included the factual record that was stipulated to at the nonevidentiary hearing, the documents attached to the motion to suppress, and the Commonwealth's memorandum in opposition thereto, which included an affidavit from the defendant and various court and probation records.

In the defendant's case, the probationary period was six months.

Neither the defendant nor the Commonwealth addresses whether the initial imposition of the GPS monitoring as a condition of probation was a search in the constitutional sense on appeal. As this initial search is interconnected with the subsequent accessing of the data by the police, as both a practical and a legal matter, we must analyze both. The record on appeal is sufficient to allow us to exercise our discretion to address this issue. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). See Canter v. Commissioner of Pub. Welfare, 423 Mass. 425, 432, 668 N.E.2d 783 (1996).

Both this court and the United States Supreme Court have previously recognized that a probationer has a diminished expectation of privacy. See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ; Commonwealth v. Moore, 473 Mass. 481, 485, 43 N.E.3d 294 (2016). See also part 2.c.ii, infra (discussing diminished expectations of privacy held by probationers).

As previously explained, the defendant was subjected to GPS monitoring following a probation violation hearing on four criminal dockets, including two restraining order violations. It is not clear from the record, however, that the defendant's probationary conditions, at least in this case, included any exclusionary zones. Indeed, the probation violation hearing and the order of probation conditions make no mention of any exclusionary zones, other than a handwritten notation on the order stating "No abuse of J." The section of the order dealing with "stay away" provisions was left blank. It does appear, however, that the defendant was at one point subjected to an exclusionary zone for a separate probationary term. See Commonwealth v. Johnson, 91 Mass. App. Ct. 296, 298, 75 N.E.3d 51 (2017).

We note, however, that the defendant's probation records fail to detail the extent of the GPS monitoring or explain the purposes for which the GPS location data would be recorded, retained, and used by law enforcement, including after his probationary period. Rather, these probation records merely note that the defendant would be subjected to GPS monitoring generally. For instance, the order of probation conditions, which was signed by the defendant, simply includes the sentencing judge's handwritten notation, "GPS 6 Mo[nths]," as a special condition of probation.

General Laws c. 276, § 90, was enacted in 1880 and was last amended in 1938. G. L. c. 276, § 90, as amended through St. 1938, c. 174, § 3. See St. 1880, c. 129, §§ 1, 5. The state of technology at the time meant that the enacting Legislature had no opportunity to evaluate the privacy interests that may now be implicated by the recording and storing of long-term historical GPS location data. See Commonwealth v. Augustine, 467 Mass. 230, 245, 4 N.E.3d 846 (2014), S.C., 472 Mass. 448, 35 N.E.3d 688 (2015) ("the digital age has altered dramatically the societal landscape"). See also United States v. Jones, 565 U.S. 400, 415, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring) ("the same technological advances that have made possible [law enforcement's] nontrespassory surveillance techniques will ... shap[e] the evolution of societal privacy expectations"). As stated supra, we must reconsider older statutes in light of new technologies to ensure that privacy rights are not left at "the mercy of advancing technology." Kyllo v. United States, 533 U.S. 27, 35, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). See Olmstead v. United States, 277 U.S. 438, 473, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting); Augustine, supra at 250-251, 4 N.E.3d 846.

The dissent minimizes this important distinction. Post at ----, 119 N.E.3d 669.

As explained supra, the dissent appears to acknowledge this point to some extent, characterizing the defendant's willingness to break into homes while wearing a GPS monitoring device as a condition of probation as a "jaw-dropping act of audacity." Post at ----, 119 N.E.3d 669.

We do not, as the dissent argues, suggest that a defendant "forfeits his [or her] expectation of privacy" upon notice of government surveillance. Post at note 4. Although notice is a relevant consideration, see Matter of a Grand Jury Subpoena, 454 Mass. 685, 689, 912 N.E.2d 970 (2009), we are in no way saying that it is dispositive. Whether notice of surveillance is given or not, the controlling question remains whether the expectation of privacy is one that society would call reasonable. See Hudson v. Palmer, 468 U.S. 517, 525 n.7, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Here, as explained supra, we conclude that it is not.

The dissent argues that whatever diminished expectation of privacy the defendant had in the GPS data during probation "would have changed the day he completed his sentence." Post at ----, 119 N.E.3d 669. On that day, according to the dissent, he was not only no longer on probation, but he recovered an undiminished right to privacy in this data retroactively, as if he had never been on probation. This is incorrect. As explained supra, the principal purposes of the original imposition of GPS monitoring as a condition of probation are to rehabilitate the defendant, deter and detect criminal activity, and protect the public. Society would not consider it reasonable for a probationer to expect that evidence that he or she committed crimes during the probationary period could not be shared with law enforcement, even after the probationary period had ended, to determine whether he or she did in fact commit the crimes. Cf. Matter of a Grand Jury Subpoena, 454 Mass. at 689 n.6, 912 N.E.2d 970 (prison officials permitted to share recordings of inmate telephone calls with law enforcement).

The dissent disputes this. Post at ----, --- N.E.3d ----. Citing "the uncontroverted statements in the defendant's memorandum in support of his motion to suppress," the dissent argues that the defendant's minute-by-minute movements over a period of months were reviewed by law enforcement. Id. at ----, --- N.E.3d ----. This, the dissent argues, surely intruded on the defendant's reasonable expectation of privacy. Although the motion judge's findings of fact on this issue do not make this point clear, the dissent overstates the record in this case. Indeed, by the defendant's very own uncontroverted admission in his motion to suppress, the Commonwealth examined the defendant's location "at certain times [on] certain days" to determine if he was at the location of known criminal activity. Recognizing that the record does not support its position, the dissent looks to information outside of the record. Specifically, the dissent cites to an exhibit entered in evidence at trial and a summary of the trial testimony of a probation official of her conduct in a separate case as support for an inference that law enforcement intruded upon a reasonable expectation of privacy. This information, however, was not before the motion judge when he considered the defendant's motion to suppress.
It is well established that in reviewing a denial of a motion to suppress, an appellate court may not consider evidence outside the factual record that was put before the motion judge. See Commonwealth v. Rivera, 441 Mass. 358, 367, 805 N.E.2d 942 (2004) ("Evidence adduced at trial but not before the motion judge ... cannot be determinative of the propriety of the motion judge's decision" [citation omitted] ); Commonwealth v. Taylor, 383 Mass. 272, 280 n.9, 418 N.E.2d 1226 (1981) ("we must judge the motion to suppress solely on the record made at the suppression hearing"); Commonwealth v. Wojcik, 358 Mass. 623, 631, 266 N.E.2d 645 (1971) ("Statements in a brief or oral argument cannot be used as a means of placing before this court any facts which are not included in the record on appeal"). Accordingly, we may not properly consider this information on appeal. Even had it been included in the record, much of the evidence cited by the dissent was not provided to us on appeal. See Chokel v. Genzyme Corp., 449 Mass. 272, 279, 867 N.E.2d 325 (2007) ("It is [the appellant's] obligation to include in the record appendix any documents on which he [or she] relies .... When a party fails to include a document in the record appendix, an appellate court is not required to look beyond that appendix to consider the missing document"). The defendant had the burden of proving that the Commonwealth's conduct violated a reasonable expectation of privacy. Commonwealth v. Miller, 475 Mass. 212, 219, 56 N.E.3d 168 (2016). The defendant here failed to meet this burden with the record as it existed before the motion judge. An appellate court cannot relitigate a motion to suppress on his behalf with materials outside the record.

The defendant did not object to the admissibility of these records or to the purpose for which they were being offered by the Commonwealth. The defendant did, however, object to their introduction to preserve his appeal from the denial of his motion to suppress them.