SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. ERIK A. FERRARA

 
 Docket:
 SJC-13711
 
 
 Dates:
 March 3, 2025 – August 26, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Firearms. License. Moped. Motor Vehicle, Moped, Firearms. Search and Seizure, Motor vehicle, Impoundment of vehicle, Inventory. Constitutional Law, Search and seizure. Evidence, Firearm, Intent. Practice, Criminal, Motion to suppress. Intent.
 
 

             Complaint received and sworn to in the Brockton Division of the District Court Department on July 6, 2021.
            A pretrial motion to suppress evidence was heard by Daniel J. Hourihan, J., and the case was tried before Daniel E. Dilorati, J.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            Adela Aprodu for the defendant.
            Arne Hantson, Assistant District Attorney, for the Commonwealth.
            BUDD, C.J.  Erik Ferrara was convicted of carrying a firearm without a license, carrying a loaded firearm without a license, and defacement of a serial number on a firearm.  On appeal, he argues that his motion to suppress was improperly denied, as was his motion for a required finding of not guilty of defacement of a serial number.  He also argues that he is entitled to a new trial on the firearm possession charges.  For the reasons discussed infra, we hold that the defendant's motion to suppress was properly denied.  We further hold that the defendant is entitled to a new trial on the firearm possession charges, and we reverse his conviction of defacement of a firearm and remand the case for entry of a judgment of not guilty on that charge. 
            Factual and procedural background.  We take relevant facts from the evidentiary hearing on the defendant's motion to suppress.[1]  On July 4, 2021, Sergeant Antonio Ferreira was patrolling in East Bridgewater when he observed two men riding a moped without helmets.  He followed the moped to a cul-de-sac and initiated a traffic stop.  The officer identified the moped's operator as John Pena and confirmed that Pena had a suspended license and an outstanding default warrant.  As the defendant, who was riding as a passenger, did not have a driver's license, neither he nor Pena was licensed to drive the moped.  Because the moped was unable to be secured, the officer arranged to have it towed.  
            Prior to impounding the moped, the officer performed an inventory search and discovered a backpack in the unlocked storage compartment underneath the seat.  When the officer picked up the backpack, he felt something hard inside, which he believed, based on his training and experience, to be a firearm.  Upon opening the backpack, the officer found a loaded handgun with the serial number removed, as well as other personal belongings, including the defendant's Massachusetts identification card.  Both the defendant and Pena were arrested.  The defendant claimed ownership of several items in the backpack but not the firearm, of which he denied having any knowledge.
            After unsuccessfully moving to suppress the fruits of the search, the defendant proceeded to trial, where he was found guilty of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a); carrying a loaded firearm without a license, in violation of G. L. c. 269, § 10 (n), and defacement of a firearm's serial number, in violation of G. L. c. 269, § 11C.[2]  
            Discussion.  1.  Motion to suppress.  The defendant does not argue that it was unlawful to conduct an inventory search once the decision was made to impound the moped.  See Commonwealth v. Matchett, 386 Mass. 492, 510 (1982), citing South Dakota v. Opperman, 428 U.S. 364, 376 (1976) (noninvestigatory search incident to impoundment to inventory and safeguard property valid exception to warrant requirement).  Instead, the defendant contends that the search was unlawful because the officer deviated from the department's inventory policy in initially deciding to impound the moped.  See Commonwealth v. Oliveira, 474 Mass. 10, 13-14 (2016) (government must establish that impoundment was "reasonably necessary" and effectuated in accordance with written policies or procedures); Commonwealth v. Eddington, 459 Mass. 102, 108 (2011).  The defendant also claims that the officer should have provided the defendant with an opportunity to remove his belongings prior to the inventory search.  
            The defendant contends that the East Bridgewater police department's inventory policy required the officer to leave the moped in place because it was neither illegally parked nor impeding traffic, and that the officer violated the policy by deciding to impound the moped.  See Commonwealth v. Garcia, 409 Mass. 675, 681 (1991) ("Standard procedures reduce the discretion of police to search at will, and so lessen the possibility that police will use inventory procedures as investigative searches").  This is an inaccurate reading of the policy.[3]  In fact, the policy identifies circumstances under which a vehicle is not to be inventoried, including instances when the vehicle "is not to be removed and does not impede traffic flow and is not illegally parked."  Here, although the moped was not parked illegally, the officer was concerned that it could not be secured -- a reason for impoundment justified by the policy.  See Commonwealth v. Brinson, 440 Mass. 609, 612 (2003), quoting Commonwealth v. Daley, 423 Mass. 747, 750 (1996) (impoundment "generally justified" if supported by danger of theft or vandalism to unattended vehicle).  
            The defendant additionally claims a violation of the department's inventory policy in the completion of the inventory paperwork.  The policy states that the officer who authorizes a vehicle impoundment "shall inspect and inventory the vehicle and its contents unless the responsibility for the same has properly been transferred to another officer."  Here, although Sergeant Ferreira was the one who initially decided to impound the vehicle and began the inventory search, that search led to an arrest upon discovery of the gun in the backpack.  It was at that point that another officer took over the inventory search.  The policy explicitly provides for such a transfer of responsibility.[4]  We discern no error.
            Finally, the defendant's argument that the officer had other options, such as allowing a third party to take charge of the moped or allowing the defendant to remove his personal items prior to the inventory search, is unavailing.  As the inventory policy required no such inquiry, there was no affirmative duty on law enforcement to offer alternatives to impoundment or the inventory search process.  Cf. Eddington, 459 Mass. at 109 n.12 ("We noted that 'some State courts have . . . placed the burden on the police to initiate consideration of obvious reasonable alternatives.'  In our view, adopting any per se rule whether such a rule applies to an owner or a driver contravenes the proper constitutional analysis . . ." [citation omitted]).  Where the record is otherwise undeveloped on this claim because it was raised for the first time on appeal, we discern no constitutional violation, much less a substantial risk of a miscarriage of justice.  See Commonwealth v. Dew, 478 Mass. 304, 309-310 (2017) (applying substantial risk standard to claims raised for first time on appeal).
            2.  Firearm possession convictions.  In 2022, the United States Supreme Court held that the Federal Constitution protects an individual's right to carry a firearm outside the home.  New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 10 (2022) (Bruen).  Applying Bruen to our own case law, which previously had saddled a defendant with the burden of asserting as an affirmative defense that he or she possessed a license, we held in 2023 that to convict an individual of unlawful possession of a firearm, the Commonwealth must prove beyond a reasonable doubt that the individual did not possess a license to carry a firearm.  Commonwealth v. Guardado, 491 Mass. 666, 690 (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II), cert. denied, 144 S. Ct. 2683 (2024).  We further held that this new rule applied to cases that were "active or pending on direct review as of the date" the Bruen decision was issued.  Id. at 693.  If a defendant was convicted in that time frame without the jury properly being instructed as to the Commonwealth's burden to show this element (even in the absence of a defendant asserting that he or she had a license as an affirmative defense), then the proper remedy is a new trial.  Guardado II, 493 Mass. at 3.  
            As the defendant's appeal was pending after Bruen was decided, he was entitled to, but did not receive, a jury instruction that the Commonwealth was required to prove that he did not possess a firearms license.  See Guardado I, 491 Mass. at 690.  The Commonwealth argues, however, that the failure to provide the instruction was harmless because, as a felon at the time he was charged with the firearm possession crimes, he was ineligible as a matter of law to obtain a firearms license.  
            In making this argument, the Commonwealth relies on Commonwealth v. Bookman, 492 Mass. 396, 401 (2023), where we concluded that the failure to instruct that the lack of a firearms license was an element of the offense was harmless beyond a reasonable doubt.  There, however, the Commonwealth presented uncontroverted testimony from a police officer that the defendant did not possess a firearms license.  Id.  In contrast, here, the Commonwealth did not present evidence that the defendant did not have a firearms license by proving that the defendant was a felon (and thus was ineligible to obtain a firearms license).  Thus, the convictions of possession of a firearm (G. L. c. 269, § 10 [a]) and possession of a loaded firearm (G. L. c. 269, § 10 [n]) must be vacated and a new trial ordered.  See Commonwealth v. Gibson, 492 Mass. 559, 579 (2023) ("Where the jury [are] not instructed on this burden, and where there is no record evidence on the lack of license, the defendant is entitled to vacatur of the conviction").  
            3.  Defacement of a firearm conviction.  The defendant argues that the Commonwealth failed to present sufficient evidence to support a conviction of intentional defacement of a firearm.  We review the sufficiency of the evidence by considering whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). 
            General Laws c. 269, § 11C, as in effect at the time of the offenses, provided in pertinent part: 
"Whoever, by himself or another, removes, defaces, alters, obliterates or mutilates in any manner the serial number or identification number of a firearm, or in any way participates therein, and whoever receives a firearm with knowledge that its serial number or identification number has been removed, defaced, altered, obliterated or mutilated in any manner, shall be punished . . . ."  
The statute further stated that "possession or control of a [defaced] firearm" constitutes prima facie evidence of a violation; however, the presumption "may be rebutted by evidence that such person had no knowledge whatever that such number had been removed . . . or by evidence that he had no guilty knowledge thereof."  G. L. c. 269, § 11C.  
            Based on the statutory language, the Commonwealth may prove either that the defendant defaced the firearm or that he or she knowingly received a firearm so defaced.  The Commonwealth introduced the firearm in evidence together with the officer's testimony that he found the firearm in the backpack containing the defendant's Massachusetts identification card and other belongings claimed by the defendant.  The officer further explained that all firearms are sold with a serial number, that this type of firearm would have had a serial number on the left side, and that this firearm had no visible serial number when he found it.  The Commonwealth contends that, because proof of possession of the defaced firearm is prima facie evidence of a violation of the statute, the evidence presented to the jury was sufficient to convict the defendant on this charge.  We disagree.
            The judge instructed the jury only on the theory of intentional defacement.[5]  Thus, to convict the defendant on this charge, the Commonwealth was required to have introduced sufficient evidence that the defendant intentionally "remove[d], deface[d], alter[ed], obliterate[d] or mutilate[d]" the serial number.  G. L. c. 269, § 11C.  See Commonwealth v. Pfeiffer, 492 Mass. 440, 451 (2023), quoting Chiarella v. United States, 445 U.S. 222, 236 (1980) ("a criminal conviction cannot be affirmed 'on the basis of a theory not presented to the jury'").  Thus, even though evidence of possession of the defaced firearm constitutes prima facie evidence of a violation of the statute, absent any evidence proving the theory upon which the jury were instructed, i.e., that the defendant knowingly and intentionally defaced the firearm, the conviction must be reversed.  
            Conclusion.  The defendant's convictions of carrying a firearm and carrying a loaded firearm without a license are vacated and remanded for a new trial.  The defendant's conviction of intentional defacement of a firearm is reversed, the verdict is set aside, and the case is remanded to the Superior Court for entry of a judgment of not guilty.
So ordered.
footnotes

            [1] In reviewing a motion to suppress, we accept the motion judge's findings of fact except where clearly erroneous and defer to the motion judge's credibility findings where they are based on live testimony.  Commonwealth v. Lepage, 494 Mass. 67, 72 (2024).  Here, the motion judge made verbal findings of fact relevant to most but not all of our discussion.  However, given that the parties do not dispute the factual events of the traffic stop, we supplement our discussion with certain details from the record testimony, implicitly credited by the motion judge.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C.,  450 Mass. 818 (2008) (reviewing court may "supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony"); Commonwealth v. Butler, 423 Mass. 517, 526 n.10 (1996) (appropriate to supplement testimony that "in no way contradict[s] the motion judge's findings . . . [but] merely fill[s] out the narrative").
            [2] Other counts against the defendant were dismissed at the request of the Commonwealth.
            [3] We review documentary evidence and findings of fact derived therefrom de novo.  Commonwealth v. Johnson, 481 Mass. 710, 714-715, cert. denied, 140 S. Ct. 247 (2019).
            [4] The policy states that the "officer directing that a vehicle be towed, removed, impounded or stored . . . shall inspect and inventory the vehicle and its contents unless the responsibility for the same has properly been transferred to another officer."
            [5] In relevant part, the judge instructed the jury that the Commonwealth was required to prove "that the defendant intentionally removed, defaced, altered, obliterated, or mutilated in some manner a serial or identification number on the firearm."  The Commonwealth declined an instruction on receipt of a firearm with a defaced serial number.