NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12001


COMMONWEALTH  vs.  JARED ABDALLAH.



Bristol.     February 11, 2016. - July 28, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[1]


Constitutional Law, Search and seizure.  Search and Seizure,
     Inventory.




     Indictments found and returned in the Superior Court
Department on June 19 and 20, 2013, and March 6, 2014.

     A pretrial motion to suppress evidence was heard by Raymond
P. Veary, Jr., J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Hines, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.


     Tara L. Blackman, Assistant District Attorney, for the
Commonwealth.
     Michael J. Fellows for the defendant.


     DUFFLY, J.  After causing a disturbance, the defendant was

_____

     [1] Justice Duffly participated in the deliberation on this
case and authored this opinion prior to her retirement.

arrested outside his hotel room in the town of Raynham on an outstanding warrant for larceny of $250 or less. Raynham police took possession of a small backpack (a cloth drawstring bag with shoulder straps made of rope) that the defendant had been carrying on his person and transported the bag, along with the defendant, to the police station, where it was searched pursuant to the Raynham police department's inventory policy. The search of the bag uncovered several thousand dollars in cash, glassine bags containing what appeared to be cocaine, and several hundred Percocet pills. The defendant was indicted on charges of trafficking in a class B substance (cocaine), G. L. c. 94C, § 32E (b) (1); trafficking in a class B substance (Percocet), G. L. c. 94C, § 32E (c) (2); and possession with the intent to distribute a Class B substance (Percocet), G. L. c. 94C, § 32A (a).[2] Following an evidentiary hearing, the defendant's motion to suppress the items found during the search was allowed by a Superior Court judge.

A single justice of this court granted the Commonwealth's application for interlocutory appeal and reported the matter to the Appeals Court. We transferred the case to this court on our

---

[2] The defendant also was indicted on charges of breaking and entering in the nighttime with intent to commit a felony, G. L. c. 266, § 16; breaking and entering in the daytime with intent to commit a felony, G. L. c. 266, § 18; two counts of larceny from a building, G. L. c. 266, § 20,; and receiving stolen property having a value over $250, G. L. c. 266, § 60.

own motion.  We conclude that, in the circumstances presented here, there was no error in the allowance of the defendant's motion to suppress.  Accordingly, we affirm the allowance of the motion, although for reasons that differ somewhat from those relied upon by the motion judge.

Background.  We set forth the facts found by the motion judge, supplementing those findings with uncontroverted evidence in the record that was credited by the judge.[3]  See Commonwealth v. White, 469 Mass. 96, 97 (2014), citing Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007).

Just before noon on June 1, 2013, three officers of the Raynham police department responded to a call regarding a disturbance at a local hotel that allegedly involved the defendant.  While en route to the hotel, Sergeant David LaPlante learned from a police dispatcher that the defendant was wanted on an outstanding warrant for larceny of $250 or less.  When the officers arrived at the hotel, the desk clerk informed them that the defendant had refused to leave his hotel room when she informed him at the posted checkout time that it was time to check out.

---

[3] Sergeant David LaPlante, one of the three arresting officers, was the sole witness at the hearing on the defendant's motion to suppress.  The motion judge stated that he found "all of the testimony of Sergeant LaPlante to be credible."  The Commonwealth also introduced the Raynham police department's detainee processing policy and inventory search policy.

As the officers approached the defendant's room, they could hear a male voice engaged in a conversation. They knocked on the door and announced their presence. When the defendant opened the door, LaPlante recognized him from prior encounters, most recently an incident in which the defendant had been the victim of a stabbing. As the defendant stepped out of the room, he was speaking on a cellular telephone that he was holding. LaPlante told him to drop the telephone, and the defendant complied. LaPlante then told the defendant that he was under arrest, asked him to turn around, and handcuffed him.

As LaPlante conducted a patfrisk of the defendant to check for weapons, he saw that the defendant was wearing a small cloth backpack. LaPlante removed the defendant's handcuffs and another officer, Lieutenant Brian Carr, took possession of the backpack. LaPlante then again handcuffed the defendant. The bag remained in Carr's custody as the officers escorted the defendant to LaPlante's police cruiser. The officers informed the defendant that he would be able to pick up his belongings, including clothing and personal items that had been left in the hotel room, at the hotel's front desk after he was released. The defendant asked the officers to secure a computer and a video game system that were in his room, and they did so. The officers also asked the defendant whether he had an automobile with him; he informed them that he had parked his grandmother's

vehicle in the hotel's parking lot. The officers sought and obtained permission from the front desk clerk to allow the vehicle to remain in the lot until someone could pick it up.

LaPlante placed the defendant in the back seat of the cruiser. The defendant's bag, which had remained in Carr's possession, was handed to LaPlante, who kept it with him in the front seat.[4] After they arrived at the police station, the defendant was booked pursuant to the Raynham police department's established booking procedures. As part of the booking process, LaPlante opened the bag and removed its contents, which included several rolls of cash amounting to over $7,000, small plastic bags containing cocaine, and approximately 500 Percocet pills.

The defendant moved to suppress all of the items seized, arguing that the search violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 1. The judge allowed the motion, finding as follows:

> "[B]y the Commonwealth's testimony, [the defendant's bag] had no connection at all with the arrest of this particular defendant. The defendant was arrested pursuant to [an outstanding] warrant . . . for the crime of larceny . . . under $250. [O]n that basis, there was no probable cause connecting the bag with the arrest. I further find under these facts that once the bag was

---

[4] When defense counsel asked LaPlante why he did not tell Carr to leave the bag with the rest of the defendant's property at the hotel, LaPlante responded, "I don't know -- that was on his person. I have no idea what was in it, and it's the way that we always have done it."

removed from the defendant, and he was rehandcuffed, that
bag [did not] offer[], and I have heard no testimony
suggesting that it offered, any threat to any police
officer. . . .  [T]he only reason that that bag[,] which
was searched[,] was eventually brought to the booking
procedure and the station . . . is by police action, not by
action of this defendant.  It was the police that removed
that bag from the defendant, the police that seized the
bag, the police that transported the bag back to the police
station, and the police who searched the bag as part of its
booking procedure."

Relying on Commonwealth v. Madera, 402 Mass. 156 (1988), the

judge concluded that there was no probable cause to search the

bag as incident to the defendant's arrest on the outstanding

warrant, and therefore the search of the bag that had been on

the defendant's person when he was arrested was unlawful.

On appeal, the Commonwealth argues, as it did during the

hearing on the motion to suppress, that the search of the

defendant's bag was a permissible inventory search that may be

undertaken not only of an arrested defendant's person, but also

of a defendant's clothing and articles he or she is carrying.

See, e.g., Illinois v. Lafayette, 462 U.S. 640, 643-649 (1983).

According to the Commonwealth, the defendant's bag was

"constructively part of his person" at the time of his arrest,

and the fact that an arresting officer removed it from his

person before placing the bag and the defendant in the police

cruiser does not affect the validity of the inventory search,

which, the judge found, was conducted in compliance with the Raynham police department's written inventory policy.[5]

The defendant maintains that the items properly were suppressed because the Commonwealth has not established that the search was not "a cover or pretext for an investigative search." See Commonwealth v. Peters, 48 Mass. App. Ct. 15, 21 (1999), quoting Commonwealth v. Sullo, 26 Mass. App. Ct. 766, 768 (1989).  He argues in essence that, where police had a practical alternative to seizing the bag and bringing it to the police station -- the officers could have left it in the custody of the hotel clerk, who already had agreed to hold the defendant's other belongings and to allow his grandmother's vehicle to remain in the parking lot -- the decision to take it to the police station was an impermissible exercise of discretion that supports the conclusion that the inventory search was a pretext for an impermissible investigative search.

Discussion.  We "may affirm [a motion judge's] ruling on any grounds supported by the record and the findings of fact." Commonwealth v. Bartlett, 465 Mass. 112, 117 (2013).

An inventory search conducted by police officers pursuant to a police department's written policy is "justified to

---

[5] The Commonwealth argues for the first time on appeal, and without citation to relevant authority, that the police were "not required to leave the backpack on the defendant during transportation, where the backpack itself could have contained a weapon."  The argument is waived.

safeguard the defendant's property, protect the police against later claims of theft or lost property, and keep weapons and contraband from the prison population." Commonwealth v. Vuthy Seng, 436 Mass. 537, 550-551, cert. denied, 537 U.S. 942 (2002). Because the police are authorized to conduct an inventory search without a warrant, "it is the Commonwealth's burden to establish that the evidence was lawfully obtained." Commonwealth v. Eddington, 459 Mass. 102, 108 (2011). See 3 W.R. LaFave, Search and Seizure § 5.5(b) (5th ed. 2012) ("A police inventory of some possession of the arrestee, such as a suitcase, presupposes that the police had some valid reason for taking custody of that object, for it is only because of such taking of custody that the police can be said to have some obligation to safeguard the contents").

We have not previously considered whether police officers are authorized to seize a bag worn by a suspect at the time of arrest and later search it pursuant to an inventory policy, where police lack probable cause to seize or search it, and no other exception to the warrant requirement applies.[6] Cf. Commonwealth v. Craan, 469 Mass. 24, 28 (2014) ("When a search is conducted without a warrant, the burden is on the Commonwealth to show that the search 'falls within a narrow

---

[6] The Commonwealth does not assert that the police had probable cause to seize the defendant's bag or that any other recognized exception to the warrant requirement applies.

class of permissible exceptions' to the warrant requirement" [citation omitted]). In addressing this issue, we must ascertain whether it was reasonable for the officers in this case to take possession of, or seize,[7] the defendant's bag and transport it to the police station. Cf. Commonwealth v. Oliveira, 474 Mass. 10, 13 (2016). This inquiry is "fact driven, with the overriding concern being the guiding touchstone of '[r]easonableness.'" See Commonwealth v. Eddington, 459 Mass. at 108, quoting Commonwealth v. Ellerbe, 430 Mass. 769, 776 (2000).

The defendant argues that, as an alternative to seizing the bag and transporting it to the police station, the officers could have left it in the custody of the hotel clerk who had agreed to secure the rest of his possessions. We must ascertain whether this option would have presented any public safety concerns or a danger of theft that would have rendered it unreasonable. See Commonwealth v. Eddington, supra at 108-109. Because, in these circumstances, there was a third party present who was willing to take possession of the defendant's

---

[7] For purposes of analysis, we conclude that the officers seized the defendant's bag when LaPlante handed it to Carr to transport to the police station, rather than leaving it in the defendant's hotel room or with the hotel clerk. Cf. Commonwealth v. Oliveira, 474 Mass. 10, 13-16 (2016) (discussing impoundment of vehicle preceding inventory search as "seizure"). We are not concerned with the initial removal of the bag from the defendant's person, because that is not the act that made it available for subsequent inventory search at the police station.

belongings, we do not think that the police reasonably could have been concerned about public safety. Likewise, there is no indication that the potential risk of theft reasonably could have led the police to seize the bag. The officers were aware that the hotel was securing the rest of the defendant's belongings, including a computer and a video game system that the police obtained from the defendant's hotel room and gave to the hotel clerk to secure. If not seized by the police, the bag would not have been accessible to the general public, as it would have been in the possession of the hotel. In these circumstances, the officers could not reasonably have believed that they needed to seize the bag in order to protect the public or the contents of the bag.

Having concluded that public safety concerns or the danger of theft did not justify the seizure of the bag, we consider whether, in the totality of the circumstances, it was reasonable for the police to seize it and transport it to the police station rather than leave it in the care of hotel personnel. Cf. Commonwealth v. Oliveira, supra at 13-14. In conducting this analysis, we consider it significant that, at the time of the defendant's arrest, the officers made arrangements with the hotel to provide safekeeping for all of his other belongings, including the computer and video game system. The police also obtained permission from the hotel clerk for the defendant's

vehicle to remain in the hotel parking lot until it could be retrieved by one of the defendant's relatives. This suggests that the officers believed it was reasonable to leave the defendant's personal possessions in the custody of the hotel. In such circumstances, we cannot conclude that it was reasonable for the officers to single out the defendant's bag to take to the police station, and to conduct a search pursuant to the police department's inventory search policy. Contrast Commonwealth v. Ellerbe, 430 Mass. at 774 ("the police had no practical alternative to towing the vehicle, and thus no discretion to exercise"); Commonwealth v. Caceres, 413 Mass. 749, 751 (1992) ("We conclude that there was no practical available alternative to the removal of the vehicle and to an inventory search of it").

The Commonwealth points out that the defendant did not ask the officers to leave his bag with the hotel clerk. That fact alone is not dispositive, however, where the officers took affirmative steps to arrange for the hotel to secure the defendant's other possessions.[8] In the totality of the circumstances, we conclude that it was unreasonable to seize the

---

[8] We observe also that LaPlante stated that he did not leave the bag with the rest of the defendant's property at the hotel in part because he had "no idea what was in it." An officer's curiosity about the contents of a bag carried by an individual who is being arrested does not, without more, provide a valid justification to seize that bag at the time of arrest.

bag.[9]  Thus, any subsequent search, even pursuant to a generally

lawful inventory search policy, was tainted by the unlawful

seizure.  See Commonwealth v. Blevines, 438 Mass. 604, 610-611

(2003).

> Order allowing motion
> to suppress affirmed.

---

[9] Because of the result we reach, we need not address the defendant's argument that the inventory search was a pretext to conduct an investigatory search.  See Commonwealth v. Ortiz, 88 Mass. App. Ct. 573, 577 (2015) (inventory policy used as pretext to conduct investigatory search).  See also Gaston v. State, 155 Ga. App. 337, 338 (1980) ("We find under the facts of this case that the search conducted on the bag was only pretextually an inventory search, since the facts indisputably show that the 'need' for an inventory of the bag was artificially created to enable the police officers to conduct a search of the bag without probable cause").