NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12744

COMMONWEALTH  vs.  ERIC NORMAN.


Middlesex.     November 7, 2019. - March 17, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Global Positioning System Device.  Constitutional Law, Search
    and seizure, Privacy.  Search and Seizure, Expectation of
    privacy.  Privacy.  Practice, Criminal, Motion to suppress.


Indictments found and returned in the Superior Court
Department on December 11, 2015.

A pretrial motion to suppress evidence was heard by Kenneth
J. Fishman, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Budd, J., in the Supreme Judicial Court
for the county of Suffolk, and the case was reported by her to
the Appeals Court.  The Supreme Judicial Court granted an
application for direct appellate review.


Jamie Michael Charles, Assistant District Attorney, for the
Commonwealth.
Matthew Spurlock, Committee for Public Counsel Services,
for the defendant.
Katharine Naples-Mitchell, for Charles Hamilton Houston
Institute for Race and Justice at Harvard Law School, amicus
curiae, submitted a brief.

<u>Matthew R. Segal & Jessie J. Rossman</u>, for American Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

GAZIANO, J.  This case concerns the admissibility of location data gleaned from a global positioning system (GPS) device imposed on a defendant as a pretrial condition of release.  We are called upon to confront a question not present in <u>Commonwealth</u> v. <u>Johnson</u>, 481 Mass. 710, cert. denied, 140 S. Ct. 247 (2019).  There, we determined that imposition of GPS monitoring on a probationer was a search but that, given the diminished privacy expectations of a probationer, the intrusiveness of such monitoring was outweighed by the legitimate governmental interests served by the use of GPS monitoring to further the goals of probation.  <u>Id</u>. at 720.

Here, we must determine whether the initial imposition of the GPS device as a condition of pretrial release violated the Fourth Amendment to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights and, if not, whether police access to the GPS data for the purposes of a new criminal investigation violated the Federal or State Constitutions.  In the circumstances here, we conclude that the initial imposition of the GPS device violated art. 14.[1]

---

[1] We acknowledge the amicus briefs of the Charles Hamilton Houston Institute for Race and Justice at Harvard Law School and the American Civil Liberties Union of Massachusetts.

1.  Background.  In July 2015, the defendant was charged in the Boston Municipal Court with possession of a class B substance with the intent to distribute, as a subsequent offense, and motor vehicle violations.  Among other conditions of release, he was ordered to stay out of the city of Boston and to wear a GPS monitoring device.[2]

He was required to sign a form that stated,

> "You are hereby placed on GPS by this Court. . . . Coordinates and other data related to your physical location while on GPS are recorded and may be shared with the court, probation, parole, attorneys and law enforcement.  Data generated by GPS equipment assigned to you is not private and confidential.  It is your responsibility to remain in contact with probation at all times while under GPS supervision unless expressly authorized."

The form also included the following statement:

> "I have read and understood the above conditions of GPS supervision and I agree to observe them.  I understand that if I violate any such condition, it may result in my being brought before the court, my arrest, revocation of probation, the entry of a guilty finding or delinquency adjudication (if not already entered), the imposition or execution of sentence and modification of my supervision."

---

[2] The record does not indicate the judge's reasons for imposing the condition of GPS monitoring, and the audio recording of the proceeding in the Boston Municipal Court has been destroyed.  We conclude, however, that a remand to determine the reasons underlying the decision to impose conditions of pretrial release more than four years ago would not be fruitful.  At this point, any useful evidence likely would be documentary, so we are in as good a position as a motion judge to evaluate the evidence.  See Commonwealth v. Cousin, 478 Mass. 608, 615 (2018).

On the evening of August 10, 2015, a home invasion and armed robbery occurred at a home in Medford; the robbers were described as two African-American men.  Police initially did not have any information linking the defendant to the crimes. Medford police contacted the probation service's electronic monitoring program (ELMO) and inquired whether any individuals under GPS supervision had been present at the time and location of the crimes.  The police did not obtain a search warrant or court order for the GPS location data.  ELMO used stored GPS data to identify the defendant as being present at the scene of the crime.  The GPS data also indicated that the defendant went to an address in Everett shortly before and shortly after the time of the home invasion.  Police then obtained a search warrant for the Everett location, where they discovered additional inculpatory information.  One of the victims of the home invasion also was presented with a photographic array that included the defendant's photograph; the victim indicated that he was "almost positive" that the defendant was one of the robbers.  The defendant was arrested and indicted on charges of, inter alia, armed robbery while masked.[3]

---

[3] The defendant also was indicted on charges of armed home invasion, armed burglary, armed assault in a dwelling, and larceny from a building.

The defendant moved to suppress the GPS location data and its fruits, arguing that police acquisition of the data violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution and art. 14. The judge found that the defendant had consented to the imposition of the GPS device and the use of the GPS location data only for the purposes of enforcing conditions of release, and not for general law enforcement purposes. The judge therefore determined that the police were not permitted to obtain the GPS location data without probable cause. Because nothing linked the defendant to the crimes before police obtained the GPS location data, the judge concluded that the search was not supported by probable cause and granted the motion to suppress.

The Commonwealth sought leave to pursue an interlocutory appeal in the county court, and a single justice allowed the appeal to proceed in the Appeals Court. We subsequently allowed the Commonwealth's petition for direct appellate review. We affirm the judge's determination, on different grounds. See Commonwealth v. Cotto, 471 Mass. 97, 118 (2015), citing Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).

2. Discussion. "In reviewing a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error,' but 'review independently the motion judge's application of constitutional principles to the facts found.'" Commonwealth

v. Moore, 473 Mass. 481, 484 (2016), quoting Commonwealth v. Franklin, 456 Mass. 818, 820 (2010).

The defendant argues that the judge's decision may be affirmed on either of two grounds:  the initial imposition of the GPS device was an unconstitutional search; or even if we were to determine that this pretrial condition of release was constitutional, the use of the GPS data for an unrelated criminal investigation was unconstitutional.  We agree that, if either of these related actions is unconstitutional, the GPS data must be suppressed.  See Johnson, 481 Mass. at 715 ("we must analyze the constitutionality of both the initial imposition of GPS monitoring for the purposes of probation and the police's subsequent review of the historical GPS location data for investigatory purposes").

We conclude that the initial imposition of GPS monitoring in this case was not based on valid government interests and thus was unreasonable and unconstitutional under art. 14. Accordingly, we need not reach the question whether, had the initial imposition been constitutional, police use of the data for a criminal investigation would have been permissible.

a.  Imposition of GPS monitoring as a search.  "[A] search in the constitutional sense occurs when the government's conduct intrudes on a person's reasonable expectation of privacy." Commonwealth v. Augustine, 467 Mass. 230, 241-242 (2014), citing

Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring), and Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). This expectation must be "an actual (subjective) expectation of privacy . . . that society is prepared to recognize as reasonable." Matter of a Grand Jury Subpoena, 454 Mass. 685, 688 (2009), quoting Commonwealth v. Blood, 400 Mass. 61, 68 (1987).

Under the Federal and Massachusetts Constitutions, "individuals have a reasonable expectation of privacy in the whole of their physical movements." See Carpenter v. United States, 138 S. Ct. 2206, 2217 (2018), citing United States v. Jones, 565 U.S. 400, 430 (2012) (Alito, J., concurring), and Jones, supra at 415 (Sotomayor, J., concurring). See also Johnson, 481 Mass. at 716-717, citing Augustine, 467 Mass. at 253, and Commonwealth v. Rousseau, 465 Mass. 372, 382 (2013) (same under art. 14). GPS monitoring "continuously track[s]" an individual's "precise location," thereby "giv[ing] probation officers and police 'access to a category of information otherwise unknowable.'" Johnson, supra at 717, quoting Carpenter, supra at 2217-2218. "The nature and extent of this GPS location data yields a 'treasure trove of very detailed and extensive information about the individual's "comings and goings"' for law enforcement." Johnson, supra, quoting Augustine, supra at 251.

In Grady v. North Carolina, 575 U.S. 306 (2015), "the United States Supreme Court held that a search under the Fourth Amendment occurs when the government 'attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements.'" Johnson, 481 Mass. at 718, quoting Grady, supra at 309. Subsequently, we held that imposing GPS monitoring as a condition of probation is a search under art. 14. See Johnson, supra, citing Commonwealth v. Feliz, 481 Mass. 689, 690-691 (2019). This is so even though probationers have a "diminished expectation of privacy relative to the general population." See Feliz, supra at 700, citing United States v. Knights, 534 U.S. 112, 119-120 (2001).

The reasonable expectation of privacy of a defendant pretrial, such as the defendant here, is greater than that of a probationer. See Commonwealth v. Silva, 471 Mass. 610, 617 (2015), citing Bell v. Wolfish, 441 U.S. 520, 545 (1979), and United States v. Cohen, 796 F.2d 20, 23-24 (2d Cir.), cert. denied, 479 U.S. 854 (1986) ("pretrial detainee enjoys at least as many constitutional rights as a convicted prisoner and perhaps more"). See also United States v. Scott, 450 F.3d 863, 873-874 (9th Cir. 2006) ("privacy and liberty interests" of individual on pretrial release are "far greater than a probationer's"). Given the greater expectation of privacy of a defendant pretrial, the implication is clear. The imposition of

GPS monitoring as a condition of pretrial release is a search under art. 14.

Although consent can justify a warrantless search, "the Commonwealth bears the burden of proof that consent was freely and voluntarily given, meaning it was unfettered by coercion, express or implied" (quotations and citations omitted). Commonwealth v. Buckley, 478 Mass. 861, 875 (2018). We have held that the signing of a contract of probation that includes GPS monitoring is not sufficient to establish consent because the "coercive quality of the circumstance in which a defendant seeks to avoid incarceration by obtaining probation on certain conditions makes principles of voluntary waiver and consent generally inapplicable." See Feliz, 481 Mass. at 702, quoting Commonwealth v. LaFrance, 402 Mass. 789, 791 n.3 (1988).

Here, the only evidence of consent is the fact that the defendant signed the form. If he had not, the consequence presumably would have been pretrial detention. Therefore, the form "does not change our constitutional analysis." See Feliz, 481 Mass. at 701-702, citing Guiney v. Police Comm'r of Boston, 411 Mass. 328, 341 (1991), O'Connor v. Police Comm'r of Boston, 408 Mass. 324, 329 (1990), and United States v. Lara, 815 F.3d

605, 609 (9th Cir. 2016).  The Commonwealth has not met its burden of showing free and voluntary consent.[4]

b.  Interest balancing.  "The Fourth Amendment and art. 14 prohibit 'unreasonable' searches and seizures."  Moore, 473 Mass. at 484, citing Commonwealth v. Rodriguez, 472 Mass. 767, 775-776 (2015).  Warrantless searches are "'presumptively unreasonable' and, therefore, presumptively unconstitutional."  Commonwealth v. White, 475 Mass. 583, 588 (2016), quoting Commonwealth v. Craan, 469 Mass. 24, 28 (2014).  See Katz, 389 U.S. at 357 ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions" [footnotes omitted]).  The Commonwealth has the burden of showing that any warrantless search "falls within a narrow class of permissible exceptions to the warrant requirement."  Commonwealth v. Ferreira, 481 Mass. 641, 655 (2019), quoting Commonwealth v. Abdallah, 475 Mass. 47, 51 (2016).  "We determine whether a search is reasonable by 'balanc[ing] the intrusiveness of the police activities at issue against any legitimate governmental interests that these activities serve.'"

_____

[4] There are some situations, however, where a pretrial condition of release would be justified by free and voluntary consent.

Moore, supra, citing Rodriguez, supra at 776.  When a search, such as GPS monitoring, is conducted as a pretrial condition of release, the only legitimate justifications for doing so are those authorized by statute; courts do not have inherent authority to impose pretrial conditions of release.  See Commonwealth v. Preston P., 483 Mass. 759, 763 (2020).

i.  Legitimate governmental interests.  The monitoring requirement at issue was imposed at arraignment as a condition of release.  Therefore, the condition must be permissible under G. L. c. 276, § 58, the applicable bail statute.  General Laws c. 276, § 58, provides, in part:

> "A justice . . . shall, when a person is held under arrest or committed either with or without a warrant for an offense other than an offense punishable by death, or, upon the motion of the commonwealth, for an offense enumerated in [G. L. c. 276, § 58A,] or for any offense on which a warrant of arrest has been issued by the superior court, hold a hearing in which the defendant and his counsel, if any, may participate and inquire into the case and shall admit such person to bail on his personal recognizance without surety unless said justice . . . determines, in the exercise of his [or her] discretion, that such a release will not reasonably assure the appearance of the person before the court" (emphasis added).

Thus, the goal and purpose of G. L. c. 276, § 58, are clear:  to permit pretrial release while ensuring that a defendant appears in court.  See Commonwealth v. Vieira, 483 Mass. 417, 420 (2019), citing Brangan v. Commonwealth, 477 Mass. 691, 692, 699 (2017), and Commonwealth v. King, 429 Mass. 169, 174 (1999)

("The purpose of bail is to assure the appearance of the accused in court").

General Laws c. 276, § 58, contains three references to conditions of release. The first reference states explicitly that conditions of release may be used to ensure a defendant's return to court:

> "Except in cases where the person is determined to pose a danger to the safety of any other person or the community under [G. L. c. 276, § 58A], bail shall be set in an amount no higher than what would reasonably assure the appearance of the person before the court after taking into account the person's financial resources; provided, however, that a higher than affordable bail may be set if neither alternative nonfinancial conditions nor a bail amount which the person could likely afford would adequately assure the person's appearance before the court" (emphasis added).

G. L. c. 276, § 58, first par.

The second reference states that if the judge setting bail "determines it to be necessary, the defendant may be ordered to abide by specified restrictions on personal associations or conduct including, but not limited to, avoiding all contact with an alleged victim of the crime and any potential witness or witnesses who may testify concerning the offense, as a condition of release." G. L. c. 276, § 58, first par. This language clearly contemplates that limits may be placed on a defendant's contact with an alleged victim, as well as with other witnesses, presumably for the purpose of "preserving the integrity of the judicial process." Josh J. v. Commonwealth, 478 Mass. 716, 721

(2018), quoting Paquette v. Commonwealth, 440 Mass. 121, 131 (2003), cert. denied, 540 U.S. 1150 (2004).

The third reference to conditions of release in G. L. c. 276, § 58, allows conditions of release to be imposed in certain crimes involving domestic abuse "in order to ensure . . . the safety of the alleged victim, any other individual or the community." See G. L. c. 276, § 58, third par. This provision is inapplicable here because the defendant was not charged with a crime involving domestic abuse.

The Commonwealth argues that the permissible goals of G. L. c. 276, § 58, include generally preventing or deterring criminal conduct. The statute's second reference to conditions of release may permit a broader range of conditions, arguably including conditions aimed at dangerousness or deterrence. See G. L. c. 276, § 58, first par. ("defendant may be ordered to abide by specified restrictions on personal associations or conduct including, but not limited to, avoiding all contact with" victim and witnesses). The Legislature, however, clearly has indicated an intent to address deterrence and dangerousness in other statutory provisions. See Paquette, 440 Mass. at 130, citing Boston Water & Sewer Comm'n v. Metropolitan Dist. Comm'n, 408 Mass. 572, 578 (1990) ("If the Legislature had intended to utilize bail revocation under the third paragraph of G. L. c. 276, § 58, as a broad preventive detention scheme with a

focus on dangerousness, then the promulgation of G. L. c. 276, §§ 58A and 58B, would have been duplicative and unnecessary"). See also Brangan, 477 Mass. at 706 (dangerousness would have been relevant "if the Commonwealth had sought to detain [the defendant] under [G. L. c. 276,] § 58A").

General Laws c. 276, § 58A, states, "[t]he [C]ommonwealth may move, based on dangerousness, for an order of pretrial detention or release on conditions for a felony offense that has as an element of the offense the use, attempted use[,] threatened use[, or a substantial risk] of physical force"). Three other statutory provisions allow conditions of release to be imposed for reasons of safety in cases involving domestic abuse. See G. L. c. 276, § 42A; G. L. c. 276, § 57, second par.; G. L. c. 276, § 58, third par. By contrast, the provision of G. L. c. 276, § 58, in question here does not contain the words "safety," "dangerousness," "deterrence," or any similar language. Therefore, we conclude that the Legislature did not intend this provision to address dangerousness or deterrence of future crimes.

Thus, the only permissible goals of pretrial conditions of release in the defendant's case were ensuring the defendant's return to court and his presence at trial, and safeguarding the integrity of the judicial process by protecting witnesses from intimidation and other forms of influence. There is no

indication on this record that GPS monitoring would have increased the likelihood of the defendant returning to court. Although the general specter of government tracking could provide an additional incentive to appear in court on specified dates, the causal link in this case is too attenuated and speculative to justify GPS monitoring. See Feliz, 481 Mass. at 709 (Commonwealth failed to show that GPS monitoring would effectuate desired result). Additionally, the exclusionary zone of the city of Boston, which could be viewed as tied to the use of GPS monitoring to assure the defendant was not present in Boston, clearly did not advance the goal of ensuring the defendant's return to the Boston Municipal Court; indeed, the docket clearly states that an exception would apply to any court appearances in Boston.

Further, there is no indication in the record that the conditions of release were intended to insulate any particular victims or civilian witnesses, who, given the nature of the crimes charged, likely did not exist.

ii. Intrusion. We turn to the degree of intrusion on the defendant's privacy. See Johnson, 481 Mass. at 715. When a judge orders GPS tracking, a "modern-day 'scarlet letter'" is physically tethered to the individual, reminding the public that the person has been charged with or convicted of a crime. Commonwealth v. Hanson H., 464 Mass. 807, 815-816 (2013),

quoting Commonwealth v. Cory, 454 Mass. 559, 570 n.18 (2009). See Commonwealth v. Goodwin, 458 Mass. 11, 22 (2010) ("ankle bracelet . . . may . . . expos[e] the [individual] to persecution or ostracism"); Commonwealth v. Raposo, 453 Mass. 739, 740 (2009) (describing "ankle bracelet, which is permanently attached to the probationer").

If a GPS monitoring device loses connection with either the cellular network or the satellite network, or if the device's battery runs low, "alerts" from ELMO are issued. Feliz, 481 Mass. at 694-695, 695 n.9 (noting daily average that "thirty-four percent of the total individuals monitored" generate alert). The individual may have to leave his or her location in search of a signal, or may be required to travel to a location where the device can be charged. See id. at 695. These frequent interruptions can endanger an individual's livelihood. See id. at 704 (noting that GPS may require individual "to leave his [or her] job and walk around outside during work hours, risking potential economic consequences, including loss of employment"). In addition, despite an individual's best efforts to comply with the strictures of GPS monitoring, connectivity issues can lead to the issuance of arrest warrants, see id. at 695, thereby subjecting the individual to the indignity and dangers of an arrest. See Commonwealth v. Charros, 443 Mass. 752, 761, cert. denied, 546 U.S. 870 (2005) ("seizure produced

all the indignity of an arrest in full view of the public").
Lastly, GPS monitoring can place an especially great burden on
homeless individuals. See Commonwealth v. Canadyan, 458 Mass.
574, 575, 578-579 (2010) (noting "undisputed evidence that
homeless shelters" could not provide electrical outlets
necessary to charge GPS units).

iii. Balancing. For a warrantless search to be
permissible under art. 14, the legitimate governmental interests
must outweigh the level of intrusion. See Moore, 473 Mass.
at 484, citing Rodriguez, 472 Mass. at 776. Because the GPS
monitoring at issue here did not serve the purposes of the
statutory scheme, the monitoring did not further any legitimate
governmental interests. Therefore, the search was clearly
impermissible. We caution that even where GPS monitoring does
serve legitimate government interests, reasonableness is not
assured; the interests must be sufficient to outweigh the severe
intrusion at stake.

Order allowing motion to
suppress affirmed.
