NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1011

COMMONWEALTH

vs.

STACEY L. ASCOLILLO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a police officer stopped the defendant's van and determined she did not have a valid driver's license, pursuant to the police tow and inventory policy in effect at the time, the officer impounded the van and its contents. After the resulting inventory search revealed weapons and contraband, the defendant was charged with firearms and drug possession violations, as well as operating with a suspended license. A judge of the District Court denied the defendant's motion to suppress.[1] We affirm.

_____

[1] The defendant then admitted to sufficient facts while reserving appellate review of the denial of her motion to suppress. See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019).

Background.  The defendant was stopped on Main Street in North Reading while driving a van with a broken tail light.  The police officer determined that the defendant's Massachusetts driver's license was suspended.  Another officer asked the defendant's passenger for identification.  He refused.

The van was parked in an area with no breakdown lane and was "obstructing a busy road."  To the east of the travel lane, there was a shopping plaza with many parking spots; an entrance to the shopping plaza was a few hundred yards north of the van's location.

The North Reading police department motor vehicle tow and inventory policy in effect at the time provided, as relevant here:

> "Officers shall remove, or cause to be removed, any vehicle located upon any designated way when:  . . . [t]he vehicle is improperly parked or standing (in accordance with 720 CMR 9.04); [or] [t]he operator of the vehicle is not properly licensed, there are no properly licensed occupants, and the vehicle would be left unattended."

Motor Vehicle Tow and Inventory Policy, § IV (2010), North Reading police department.

The first officer told the defendant that because her license was suspended, he could not let her drive the van, and that he needed to impound, inventory, and tow it.  He allowed the defendant and her passenger to retrieve items from the van and to call a friend to come pick them up.  The officer did not

2

tell the defendant that she could provide alternatives to impounding and towing the van.  When the friend came to pick up the defendant the van had not yet been towed.  The defendant did not ask the officer whether the friend or someone else could remove the van for her.  During an inventory search, officers found ammunition, knives and bats, and various pills in a pill bottle labeled with a name other than the defendant's.

Discussion.  When we review a ruling on a motion to suppress, "we adopt the motion judge's factual findings absent clear error" and "independently determine whether the judge correctly applied constitutional principles to the facts as found."  Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008).

"Under both the United States and Massachusetts Constitutions, an inventory search is lawful only if, first, the seizure (or impoundment) of the vehicle was reasonable; and, second, the search of the vehicle that follows its seizure was conducted in accord with standard police written procedures" (citations omitted).  Commonwealth v. Oliveira, 474 Mass. 10, 13 (2016).  "[T]he Commonwealth bears the burden of proving the constitutionality of both" the impoundment and inventory search.  Commonwealth v. Ehiabhi, 478 Mass. 154, 164-165 (2017).  Here, given the defendant's challenge on appeal, we need only address the first issue, the propriety of the impoundment.

3

The "nature of the impoundment decision . . . requires the police to act reasonably and 'necessitates a case-by-case analysis that takes into account the numerous and varied situations in which decisions to impound are made.'" Oliveira, 474 Mass. at 16, quoting Commonwealth v. Eddington, 459 Mass. 102, 109 n.12 (2011).

> "[A] vehicle may be seized for one of at least four legitimate purposes:  to protect the vehicle and its contents from theft or vandalism; to protect the public from dangerous items that might be in the vehicle; to protect public safety where the vehicle, as parked, creates a dangerous condition; or where the vehicle is parked on private property without the permission of the property owner as a result of a police stop, to spare the owner the burden of having to cause the vehicle to be towed" (citations omitted).

Oliveira, 474 Mass. at 13.

"If the vehicle was seized for a legitimate purpose, we look next to whether the seizure was reasonably necessary based on the totality of the evidence," including "whether the vehicle reasonably could have been left in the place it was parked and therefore need not have been seized" (citation omitted). Oliveira, supra at 14.  Where a stop results in the driver's not being able to move the car personally, "the police are responsible both for the location of the vehicle and for depriving the vehicle of its driver, and therefore might be held responsible if the vehicle's location created a risk to public

4

safety or left the vehicle vulnerable to vandalism or theft"

(citation omitted).  Id.

> "Where the vehicle reasonably could not have been left in
> the place it was parked, we consider whether the owner of
> the vehicle or a person clearly authorized by the owner to
> drive the vehicle was present and lawfully able to drive
> the vehicle away, that is, whether the vehicle was properly
> registered and the person was licensed to drive and neither
> under arrest nor under the influence of drugs or alcohol.
> Where the owner or authorized driver, for whatever reason,
> was unable to drive the vehicle away, we consider whether
> the owner or authorized driver offered the police a lawful
> and practical alternative to impoundment of the vehicle."

Id. at 14-15.

The defendant maintains that suppression was required
because the officers had a duty to ask her if she could provide
a reasonable alternative before impounding the vehicle.  In this
context, the "determinations are fact driven, with the
overriding concern being the guiding touchstone of
'reasonableness.'"  Eddington, 459 Mass. at 108, citing
Commonwealth v. Ellerbe, 430 Mass. 769, 776 (2000).

In support of her claim that it was unreasonable to impound
her van without first asking her for alternatives, the defendant
relies on Commonwealth v. Abdallah, 475 Mass. 47 (2016) and
Commonwealth v. Nicoleau, 90 Mass. App. Ct. 518 (2016).  Neither
case mandates the outcome the defendant seeks, although neither
prohibits it.  In Abdallah, the Supreme Judicial Court affirmed
the suppression of a bag that the defendant had been carrying

5

when arrested outside of his hotel room, when the hotel had agreed to secure all other items from the defendant's hotel room at the front desk. Abdallah, 475 Mass. at 49. The court determined that, in the circumstances, the seizure of the bag was justified neither by public safety concerns nor to protect the public or the contents of the bag. Id. at 52. Looking at "the totality of the circumstances," the court recognized that "at the time of the defendant's arrest, the officers made arrangements with the hotel to provide safekeeping for all of his other belongings," and "obtained permission from the hotel clerk for the defendant's vehicle to remain in the hotel parking lot until it could be retrieved by one of the defendant's relatives." Id. at 52-53. From these actions, the court concluded that "the officers believed it was reasonable to leave the defendant's personal possessions in the custody of the hotel." Id. at 53. Given that the officer knew about this reasonable alternative and "took affirmative steps to arrange for the hotel to secure the defendant's other possessions," the court concluded that it was "unreasonable to seize the bag." Id.

In Nicoleau, the defendant was arrested after parking his unlicensed, unregistered car in front of his home. Nicoleau, 90 Mass. App. Ct. at 519. Before impounding the car, the officers

6

removed a music player from the car and gave it to the defendant's grandmother, who was on the scene.  Id.  They gave the grandmother the defendant's keys as well.  The police also removed a backpack from the back seat of the car but, instead of giving it to the grandmother, opened it and discovered a knife inside.  Id.  Affirming the suppression of the knife, we concluded that "[t]he seizure of an item that is not itself suspected to be dangerous, in circumstances where there is a responsible third party available to take possession of it, is inconsistent with the purposes underlying an inventory search" (citation omitted).  Id. at 522.  We reasoned that Abdallah, 475 Mass. at 52-53, "requires an inquiry into whether the officers in this case had a reasonable practical alternative to seizing the backpack and conducting an inventory search of its interior."  Nicoleau, 90 Mass. App. Ct. at 522.  "Having made the decision to give the music player to the defendant's grandmother, the police did not have the discretion to seize and inventory the defendant's backpack, which also could have been turned over to the grandmother."  Id. at 523.

As the Supreme Judicial Court has explained, "[w]e have never held that police may disregard a readily apparent alternative to impoundment simply because a defendant does not request that a passenger be allowed to leave with the vehicle."

See Commonwealth v. Goncalves-Mendez, 484 Mass. 80, 85 (2020). Here, by contrast to Abdallah and Nicoleau, there was no "readily apparent alternative" to impoundment. When asked, the defendant's passenger refused to provide any identification to the officers. Because proving that he was licensed to drive would have involved identifying himself, we conclude that having the passenger take possession of the vehicle was not a reasonable alternative to impoundment. See Goncalves-Mendez, 484 Mass. at 85.

Neither Massachusetts appellate court has yet taken the step the defendant urges us to take. In addition to requiring officers to offer that a licensed passenger may take custody of the vehicle, the Supreme Judicial Court has "held that police officers were required to honor an owner's or authorized driver's requested alternative to impoundment where doing so was 'lawful and practical'" (emphasis added). Goncalves-Mendez, 484 Mass. at 83. Although the friend arrived to pick up the defendant and her passenger, the defendant did not request that the friend be allowed to move the van.

The Supreme Judicial Court has also "concluded that an inventory search of a defendant's personal belongings was unreasonable where police were independently aware of an alternative to seizing them." Goncalves-Mendez, 484 Mass. at

8

83-84, citing Abdallah, 475 Mass. at 51-52.  Unlike the hotel clerk in Abdallah and the grandmother in Nicoleau, the defendant's friend was not a known alternative to seizing the van; that friend arrived in another vehicle and "reasonableness" did not require that the police brainstorm how that friend might safely move the van while also managing the vehicle in which they arrived.  Finally, although "the better practice is to 'inform the driver that the vehicle will be taken to a police facility or private storage facility for safekeeping unless the driver directs the officer to dispose of it in some lawful manner,'" the Supreme Judicial Court has not yet said that reasonableness requires it.  Goncalves-Mendez, 484 Mass. at 85 n.8, quoting Eddington, 459 Mass. at 112.  Given the precision with which that court has articulated the rules in this area, we think that if the rule is extended to include a requirement that the driver must be informed, it must be announced by that court. We decline the invitation to extend the rule here.

Here, the defendant could not drive.  The van was in an unsafe location on the side of a busy road.  The police were not aware that the passenger could lawfully drive the van.  The friend arrived in another vehicle in which the defendant and passenger were to be taken from the scene, after the police had made the decision to impound the defendant's van.  In the

9

circumstances, while it would have been "better practice" to inform the defendant that she had options other than impoundment, such a discussion was not required.  Accordingly, we affirm the denial of the motion to suppress.

Order denying motion to
  suppress affirmed.

By the Court (Rubin, Grant &
  Hershfang, JJ.[2]),

Clerk

Entered:  September 11, 2024.

---

[2] The panelists are listed in order of seniority.