NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-704

COMMONWEALTH

vs.

KARRAR A. ABDULHUSSEIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial in the District Court on consolidated complaints, the defendant was convicted of possessing a firearm without a license, see G. L. c. 269, § 10 (a), and possessing ammunition without a firearm identification (FID) card, see G. L. c. 269, § 10 (h) (1).[1]  On appeal, the defendant argues that the judge should have granted his motion to suppress the key evidence introduced against him at trial, namely, the gun and ammunition.  We affirm.

_____

[1] The defendant was charged with a host of other crimes arising from the same episode.  Those other charges were all dismissed, nol prossed, or resulted in a required finding of not guilty in the defendant's favor.

Background.  We recite the facts found by the motion judge and supported by the record.  At 9:33 A.M. on July 10, 2021, a police dispatcher received a call from a woman who sounded hysterical and very scared and was asking for police assistance. The caller identified herself and said that she had been hit by her baby's father, who had a gun and had tried to shoot them. The caller identified her baby's father by name (the defendant's name) and spelled it.  She also provided a description of his appearance, explaining that he was an "Arabic" male, twenty-one years of age, wearing a grey hoodie with shorts.  The caller stated that the defendant had left an address on Russell Street and was walking through backyards toward the high school.

Within one minute of the call, the dispatcher relayed the information via radio, alerting officers of the alleged offenses perpetrated by an "Arabic male . . . in his twenties . . . name Karrar . . . walking toward the high school . . . from Russell Street . . . gray hooded sweatshirt . . . shorts . . . does have a firearm."

Detective Kelsey Grenham, who was on patrol in that sector, received the radio dispatch and responded to the place where she believed the suspect would be, given the description of the direction the suspect was walking as relayed via dispatch. Within minutes, Grenham encountered the defendant, who matched the description.  There was no one else walking in that area.

2

Grenham radioed to dispatch and initiated an interaction with the defendant, asking him to stop; the defendant complied. Grenham asked the defendant if she could pat frisk him; the defendant refused. As Grenham continued to approach, she reached for a bag that was around the defendant's neck, draped in front of his chest. The bag was about one foot wide, large enough to hold a handgun, and composed of soft material. As Grenham reached for the bag, the defendant pulled away. Within a minute or so, two other officers arrived on the scene.

Grenham then proceeded to pat down the outer layer of the defendant's clothing. Grenham felt a hard object in the defendant's shorts and reached inside to remove the defendant's cell phone. Grenham again attempted to search the bag, but the defendant moved away and stated that his cell phone was in the bag. Grenham reached for the bag a third time, unclasped it, and removed herself to a nearby area. The bag was heavy, and Grenham could tell something was inside it. Grenham opened the bag, revealing a loaded firearm with a chambered round.

Discussion. In reviewing a ruling on a motion to suppress, "we adopt the motion judge's factual findings absent clear error," Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008), and "conduct an independent review of his ultimate findings and conclusions of law," Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). The Commonwealth bears the burden of proof where there

3

has been a warrantless stop, see Commonwealth v. Comita, 441 Mass. 86, 91 (2004), or search. See Commonwealth v. Henley, 488 Mass. 95, 100 (2021), citing Commonwealth v. Adallah, 475 Mass. 47, 51 (2016).

On appeal, the parties agree that the defendant was lawfully stopped by the police, as there was at that moment at least reasonable suspicion[2] that the defendant had just engaged in criminal conduct. See Commonwealth v. Resende, 94 Mass. App. Ct. 194, 197 (2018) (reasonable suspicion justifying stop exists where facts and circumstances give police reason to believe that person is committing, has committed, or is about to commit a crime).

The defendant argues, however, that the police should not have opened the bag he had strapped around his body, where they had no information that the suspect was carrying a bag and they made no observation of a weapon or anything suggesting a concealed weapon. See Commonwealth v. Karen K., 491 Mass. 165, 172 (2023). We disagree. There was reasonable suspicion to

---

[2] Although we need not decide the issue, the recovery of the gun and ammunition was likely justified as a search incident to an arrest based on probable cause to believe the defendant had committed various crimes, including assault with a gun. See Commonwealth v. Zorn, 66 Mass. App. Ct. 228, 234 (2006) (probable cause may be based on report of identified victim of crime with corroboration). See also Commonwealth v. Figueroa, 468 Mass. 204, 215 (2014) (search incident to arrest allows search of area within defendant's immediate control at moment of arrest, even though defendant may be secured at time of search).

4

believe that the defendant had committed the crime of assault with a gun, only minutes earlier, and we have little difficulty in concluding that the police therefore had reason to believe that the defendant was still armed and dangerous, justifying a patfrisk of the defendant, as well as of the bag he wore around his body.  See Commonwealth v. Johnson-Rivera, 104 Mass. App. Ct. 533, 536 (2024) (warrantless search of cross-body bag justified where there was reasonable suspicion to believe that defendant was unlawfully carrying firearm).

There is "narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where [s]he has reason to believe that [s]he is dealing with an armed and dangerous individual."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 36 n.3 (2020), quoting Terry v. Ohio, 392 U.S. 1, 27 (1968).  Relying on Commonwealth v. Pagan, 440 Mass. 62 (2003), the defendant contends that the police were not permitted to search the bag because the exigency justifying the search -- an armed and dangerous suspect -- had been dissipated by the arrival of additional police officers and the removal of the bag from the defendant.  In Pagan, supra at 63-64, the defendant was stopped on suspicion of breaking and entering.  A backpack was removed from him, opened, and searched in the presence of several police officers.  Id.  The court held that the police were not required to pat frisk the backpack before

5

opening it where the process of removing the backpack from the defendant made it clear that it contained heavy hard objects; a patfrisk of the bag would have been superfluous.  Id. at 71.

Likewise here, the process of removing the bag from the defendant made it clear to Grenham that the bag contained a hard, heavy item; there was no need for her to pat frisk the bag prior to opening it.  Although the court in Pagan, 440 Mass. at 67, recognized that sufficient police control over the defendant and the bag might remove exigency, it did not decide the issue in that case.[3]

In any event, the record discloses that two officers arrived at the scene a few minutes after Grenham encountered the defendant and that the gun was recovered within five minutes of Grenham starting the interaction with the defendant.  Although two officers stood with the defendant while Grenham moved some distance away and searched the bag, the defendant was not handcuffed.  Under the circumstances, we cannot say that the situation was under control such that the police could be assured that the gun might not accidentally discharge or the

---

[3] The single Massachusetts case cited in Pagan, supra, for the proposition that sufficient police control may dissipate exigency to immediately search a bag, Commonwealth v. Madera, 402 Mass. 156, 160 (1988), did not actually decide that issue. Madera involved a search incident to arrest, where the court upheld the warrantless search of a bag even though police presence was substantial and risk of defendant recovering bag was minimal.

defendant could not regain access to the gun.[4]  Compare <u>Pagan</u>, 440 Mass. at 67 (threat was not neutralized where additional officers had only been on scene for three minutes prior to search of bag and scene was in process of being secured).  The motion to suppress was properly denied.

<u>Judgments affirmed</u>.

By the Court (Massing, Singh & Grant, JJ.[5]),

Clerk

Entered: December 12, 2024.

---

[4] At the motion to suppress stage, the defendant's argument was that the search of the bag was unlawful because a patfrisk was required prior to the search.  The claim that there was no exigency justifying an immediate search once additional officers arrived and the bag was removed from the defendant was not made.

[5] The panelists are listed in order of seniority.